[Cite as *State v. Martino*, 2018-Ohio-2882.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2017-09-139 |
| | : | <u>O P I N I O N</u> |
| - vs - | | 7/23/2018 |
| | : | |
| CRYSTAL MARTINO, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 17CRB02846-A

Thomas A. Dierling, Hamilton City Prosecutor, 345 High Street, Hamilton, OH 45011, for plaintiff-appellee

Christopher Paul Frederick, Suite 550, 300 High Street, Hamilton, OH 45011, for defendant-appellant

**S. POWELL, P.J.**

{¶ 1} Defendant-appellant, Crystal Martino, appeals from her conviction in the Hamilton Municipal Court for two counts of domestic violence following a bench trial. For the reasons outlined below, we affirm.

**Facts and Procedural History**

{¶ 2} This appeal involves Martino's conviction for two counts of domestic violence

in violation of R.C. 2919.25(A), both first-degree misdemeanors. Pursuant to that statute, "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." There is no dispute the alleged victims, L.C. and S.G., were Martino's family or household members as that phrase is defined by R.C. 2919.25(F). There is also no dispute that, if the allegations made by L.C. and S.G. proved true, Martino caused L.C. and S.G. to suffer physical harm.

{¶ 3} The charges arose as a part of two separate incidents occurring on June 24 and July 8, 2017, respectively. As it relates to the June 24, 2017 incident, it was alleged Martino struck L.C. in the face with her keys while at a birthday party for Martino's granddaughter, which caused L.C. to suffer a cut above her right eye that required stitches. As it relates to the July 8, 2017 incident, it was alleged Martino, while confronting S.G. about a missing cell phone, pulled S.G. from her bed and struck S.G. in the head and chest. Following a bench trial, Martino was found guilty of both charges. In so holding, the trial court specifically stated that it found both L.C. and S.G.'s testimony credible, whereas the testimony from Martino and Martino's mother, Lana Terry, was not.

{¶ 4} Martino now appeals from her conviction, raising the following single assignment of error for review.

{¶ 5} MS. MARTINO'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 6} In her single assignment of error, Martino argues her conviction was against the manifest weight of the evidence. We disagree.

**Standard of Review**

{¶ 7} In reviewing a manifest weight of the evidence challenge, this court examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-

- 2 -

177, 2012-Ohio-2372, ¶ 14. In conducting such a review, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 43.

### June 24, 2017 Incident Involving L.C.

{¶ 8} As it relates to the June 24, 2017 incident involving L.C., L.C. testified Martino "got really, really mad and got in my face" after she told Martino her son was "out of control" and being "very rude" at a birthday party for Martino's granddaughter. In response, L.C. told Martino to back up away from her. However, instead of backing up, L.C. testified Martino threw her phone down by L.C.'s feet "and the next thing I know my face was full of blood." Explaining further, L.C. testified that after Martino threw her phone, L.C. "turned around and said, 'what the heck are you doing,' and then [Martino] swung" striking L.C. one time above her right eye with a closed fist. When asked what hand Martino struck her with, L.C. testified "[t]he left, because she had keys in her hand and I remember the keys being wrapped around her wrist" with a "little lasso thingy[.]"

{¶ 9} Contrary to L.C.'s testimony, Martino's mother, Terry, testified L.C. angrily

- 3 -

confronted Martino explaining to Martino that her son was an "ass" who "[g]ives her no respect." To this, Terry testified Martino told L.C. to "shut up," which prompted L.C. to tell Martino she did not have to shut up "[a]nd she went rambling on and on." Terry then testified Martino threw her phone down and abruptly raised her hands and "the key went like that and got [L.C.] in the head." As Terry testified, "[Martino] threw both hands and when she threw that hand that key just went and hit [L.C.]." Thereafter, when asked if she thought Martino hitting L.C. with her keys was an accident, Terry testified, "[i]t was an accident because [Martino] was just talking/hollering and – and [L.C.] got in her face and when – when uh – that happened [L.C.] socked uh – [Martino] in the jaw."

{¶ 10} Similar to Terry's testimony, Martino also testified L.C. angrily confronted her at her granddaughter's birthday party telling her how to raise her 11-year-old son. Not wanting to hear any criticism on how she should raise her children, Martino testified she and L.C. continued arguing "face-to-face" when she "swung" her hand with her keys wrapped around her wrist "and then when I went and did that" her keys struck L.C. in the face. When asked if she was trying to hit L.C. with her keys, Martino testified she was not trying to hit L.C. and that she would never do anything to hurt L.C. "I was just, yeah. Just throwing my keys up. We was yelling back and forth." Concluding, Martino testified she never intended to strike L.C. and that "[i]t was an accident," "[a]ccidents happen."

### July 8, 2017 Incident Involving S.G.

{¶ 11} As it relates to the July 8, 2017 incident involving S.G., S.G. testified Martino confronted her while she was asleep in her bedroom "yelling" and "screaming" about a missing cell phone. According to S.G., Martino pulled her out of bed and onto the floor where they wrestled for approximately four minutes. Once the wrestling stopped, S.G. testified Martino started "swinging," hitting, and pushing her down the hallway ordering her to retrieve the missing cell phone. To this, S.G. testified Martino would not stop pushing

her, "so I acted like I was going to go get the phone just so [Martino] would get off of me." However, instead of retrieving the missing cell phone, S.G. testified she drove down the street and called the police. When asked where Martino struck her, S.G. testified Martino struck her in the head and chest. "And – and mostly just pushing me, too. And she pulls – she gets crazy."

{¶ 12} Martino did not deny confronting S.G. about a missing cell phone, but denied ever pulling S.G. out of bed and wrestling with S.G. on the floor. Martino also denied hitting S.G. in the head and chest. Martino, however, admitted she pushed S.G., but claimed the push was reciprocal in that S.G. also pushed her. As Martino testified, "she pushed me and I pushed her[.]"

## Analysis

{¶ 13} After a full and thorough review of the record, we find Martino's conviction for two counts of domestic violence was not against the manifest weight of the evidence. The victims in both cases, L.C. and S.G., testified Martino caused them physical harm. The trial court found L.C. and S.G.'s testimony credible, whereas the court found Martino and Terry's testimony was not. Although Martino believes L.C. and S.G.'s testimony lacked credibility, it is well-established that it is the trier of fact who makes determinations of credibility and the weight to be given to the evidence presented at trial. *State v. Erickson*, 12th Dist. Warren No. CA2014-10-131, 2015-Ohio-2086, ¶ 42, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. It is equally well-established that a conviction is not against the manifest weight of the evidence merely because the trier of fact believed the testimony of the state's witnesses. *State v. Crossty*, 12th Dist. Clermont Nos. CA2017-01-003 thru CA2017-01-005, 2017-Ohio-8267, ¶ 68. Simply stated, "[a]s the trier of fact is in the best position to judge the credibility of the witnesses, we will not disturb the trial court's finding in regard to which version of events was credible, and which was not." *State v.*

*Bonner*, 12th Dist. Butler No. CA2012-09-195, 2013-Ohio-3670, ¶ 13. Martino's claim otherwise lacks merit.

## Conclusion

{¶ 14} In light of the foregoing, because Martino's conviction for two counts of domestic violence was not against the manifest weight of the evidence, Martino's single assignment of error lacks merit and is overruled.

{¶ 15} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.