[Cite as *State v. Anderson*, 2018-Ohio-4262.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2018-01-004 |
| | : | O P I N I O N |
| - vs - | | 10/22/2018 |
| | : | |
| JOHN D. ANDERSON, | : | |
| Defendant-Appellant | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 17CRB04219-A

Thomas A. Dierling, Hamilton City Prosecutor, 345 High Street, Hamilton, Ohio 45011, for plaintiff-appellee

Christopher P. Frederick, 300 High Street, Suite 550, Hamilton, Ohio 45011, for defendant-appellant

**HENDRICKSON, J.**

{¶ 1}  Defendant-appellant, John D. Anderson, appeals from his conviction in the Hamilton Municipal Court for assault. For the reasons set forth below, we affirm appellant's conviction.

{¶ 2}  On September 18, 2017, appellant was charged by complaint with two counts of assault in violation of R.C. 2903.13(A)(1), misdemeanors of the first degree. The charges

arose out of an incident that occurred at Theresa Whitt's home in Hamilton, Ohio on June 22, 2017. On this date, appellant got into a physical altercation with Whitt and her fiancé, Raymond Johnson.[1] Appellant was alleged to have struck Whitt in the forehead with his forearm and to have grabbed Johnson's throat and choked him with both hands.

{¶ 3} Appellant pled not guilty to the charges and a bench trial was held on November 28, 2017. At this time, the state presented testimony from Whitt, Johnson, Whitt's brother Michael Bussell, and Butler County Sheriff's Deputy Joseph Wells. According to Whitt's and Johnson's testimony, around 5:00 p.m. or 6:00 p.m. on June 22, 2017, appellant, his girlfriend Christina, and their two-year-old daughter arrived at Whitt's home so that Christina could collect personal items she had left there. Christina exited the vehicle and went into the home while appellant remained outside with the couple's daughter.

{¶ 4} Appellant was seated in his vehicle when Whitt approached him. The two got into an argument and appellant called out to Johnson, asking Johnson to come get Whitt "out of [his] face." Johnson did as appellant requested, but appellant kept "running his mouth" so Johnson told appellant to "just shut the f--k up." According to both Whitt and Johnson, appellant then "lunged out of the car" before grabbing Johnson by the throat with both hands and lifting him off the ground. Appellant asked Johnson, "What are you going to do, old man?" Johnson testified that appellant choked him, that he felt threatened, and that appellant only stopped choking him after a neighbor came outside to see who was causing a commotion. After appellant released Johnson, appellant immediately got back into his vehicle and he and Christina drove away from Whitt's residence.

{¶ 5} Johnson estimated appellant only choked him for about 20 to 30 seconds,

---

1. The two assault charges appellant faced were rendered by separate complaints. Case No. 17CRB04219-A charged appellant with assaulting Johnson and Case No. 17CRB04220-A charged appellant with assaulting Whitt. As appellant was acquitted of assaulting Whitt, he only appealed his conviction in Case No. 17CRB04219-A.

whereas Whitt believed appellant choked Johnson for about two to three minutes. Both Johnson and Whitt observed that Johnson had red marks on his throat from being choked. Whitt also had a red mark on her forehead from where she was struck by appellant's forearm during the choking incident. Whitt testified that she did not believe appellant intentionally struck her in the forehead.

{¶ 6} Bussell testified that he was at Whitt's home on June 22, 2017, and had observed appellant using both hands to hold Johnson off the ground by his neck. Deputy Wells testified that after being dispatched to Whitt's home on a report of a disturbance, he observed a red mark to Whitt's forehead and red marks on the sides of Johnson's neck. Wells also testified that although Whitt and Johnson admitted they had been drinking that evening, Johnson "didn't seem drunk or really intoxicated. He spoke well."

{¶ 7} Following the state's presentation of its case-in-chief, appellant moved for acquittal pursuant to Crim.R. 29. The trial court denied the motion, and appellant presented testimony from Christina. Christina stated that upon arriving at Whitt's home, she, appellant, and their daughter exited the vehicle. Christina went inside Whitt's home to collect her belongings. When she came out, she observed appellant sitting in the vehicle with their daughter in the back seat. Christina stated she overheard Whitt and Johnson say, "we should go down there and whoop [appellant's] ass." Whitt walked up to the car and nudged appellant's arm before getting into an argument with appellant. Appellant then got out of the vehicle. Christina observed Johnson approach appellant with his hands clenched, "g[e]t in [appellant's] face," and threaten to "kick [appellant's] ass." It was only then that appellant made physical contact with Johnson, shoving Johnson backwards by using both of his hands. According to Christina, appellant put his hands "on the top part of [Johnson's] shoulders" or somewhat near the "collar bone area." She expressly denied that appellant choked Johnson or that he lifted Johnson off the ground by the throat.

- 3 -

{¶ 8} Appellant then testified on his own behalf. He stated that upon arriving at Whitt's house, he noticed that Whitt and Johnson had been drinking. He therefore decided to return to his vehicle with his daughter. Whitt followed and the two got into an argument, which caused appellant's daughter to become upset and start crying. Appellant exited his vehicle, and Johnson came towards appellant with his fists clenched, stating that he was going to "knock [appellant's] effin brains out * * * [and] take [appellant's] daughter out of the car." Appellant told Johnson not to come any closer because he felt Johnson was threatening him and his daughter. Appellant stated that when Johnson continued to come at him with his fists clenched, appellant pushed him near his collarbone area to get him to back up. Appellant denied that he grabbed Johnson by his neck or that he choked Johnson.

{¶ 9} Appellant acknowledged that at the time he pushed Johnson, Johnson had not "swung at him" or made physical contact with him. However, appellant stated that he felt like Johnson "would have done something" had he not been pushed backwards as Johnson was drunk and had clenched fists.

{¶ 10} Following appellant's testimony, the defense rested, and the trial court took the matter under advisement. On December 11, 2017, the trial court rendered its verdict, finding appellant guilty of assaulting Johnson and not guilty of assaulting Whitt. In rendering its verdict, the court specifically stated that "the court does not find the defendant['s] version of events to be credible. Instead the court believes by proof beyond a reasonable doubt that the defendant choked Mr. Johnson. * * * The court does find that the state's witnesses were credible."

{¶ 11} Appellant was sentenced to 180 days in jail. He was also placed on community control for two years, ordered to complete an anger management class, and ordered to pay court costs and fines.

{¶ 12} Appellant timely appealed, raising the following assignment of error:

{¶ 13}   [APPELLANT'S] CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 14}   In his sole assignment of error, appellant argues his conviction for assaulting Johnson was against the manifest weight of the evidence.  Appellant contends he presented evidence demonstrating that he acted in self-defense when he pushed Johnson and that his actions were reasonable as Johnson was the initial aggressor.

{¶ 15}   A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other."  *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14.  To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.  An appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction."  *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 16}   Appellant was convicted of assault in violation of R.C. 2903.13(A)(1), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."  "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."  R.C. 2901.22(B).

{¶ 17}   After reviewing the record, weighing inferences and examining the credibility of the witnesses, we find that appellant's conviction for assault is not against the manifest

weight of the evidence. The trier of fact was presented with two different versions of events, and the trial court found the state's version of events more credible. Appellant's conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony. *See State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. When there is a conflict in the testimony of witnesses, it is for the trier of fact to determine the weight and credibility to be given to such evidence. *State v. Marcum*, 12th Dist. Butler No. CA2017-05-057, 2018-Ohio-1009, ¶ 31, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Here, the state presented testimony from Whitt, Johnson, and Bussell that appellant grabbed Johnson's throat with both hands and lifted him off the ground. Johnson testified that appellant choked him for around 20 to 30 seconds. Johnson, Whitt, and Deputy Wells all observed red marks around Johnson's neck. Based on the foregoing testimony, the trier of fact was entitled to find that appellant knowingly caused or attempted to cause Johnson physical harm.

{¶ 18} Furthermore, contrary to appellant's assertions, the record supports the trier of fact's determination that appellant did not act in self-defense or in defense of another. To establish a claim of self-defense in situations involving the use of nondeadly force, a defendant must prove by a preponderance of the evidence that (1) he was not at fault in creating the situation giving rise to the altercation, and (2) he had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and his only means to protect himself from the danger was by the use of force not likely to cause death or great bodily harm. *State v. Griffin*, 12th Dist. Clermont No. CA2017-10-150, 2018-Ohio-3119, ¶ 10, citing *State v. Russell*, 12th Dist. Warren Nos. CA2011-06-058 and CA2011-09-097, 2012-Ohio-1127, ¶ 33. When acting in self-defense, "[t]he defendant is privileged to use that force which is reasonably necessary to repel the attack." *State v. Williford*, 49 Ohio St.3d 247, 249 (1990). "If the defendant fails to prove *any one* of these

elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense." (Emphasis sic.) *Id.*

{¶ 19} Although appellant presented testimony from himself and his girlfriend that Johnson threatened to "whoop [appellant's] ass" and approached appellant with clenched fists, the trial court found no credible evidence that appellant honestly believed Johnson posed a threat of imminent bodily harm to him. The court stated, "And finally, on the issue of self-defense, the court never felt that there was any credible or believable [evidence] that the defendant was ever actually in fear [of] harm for himself or his daughter." As the trial court noted, appellant was six inches taller and fifty pounds heavier than Johnson. Even if appellant had honestly believed he was in danger of being struck by Johnson because Johnson had "clenched fists," appellant exceeded the degree of force that was reasonably necessary to repel Johnson's anticipated attack when appellant clutched Johnson's neck with both hands, lifted Johnson of the ground, and proceeded to choke Johnson for 20 to 30 seconds.

{¶ 20} Appellant also failed to establish that he was not responsible for creating the situation giving rise to the physical altercation. The trial court found appellant was "at fault in creating the situation by getting out of his vehicle to escalate [events]" and the evidence presented at trial supports this finding. Whitt, Johnson, Christina, and even appellant himself testified that after engaging in a verbal argument with Whitt, appellant voluntarily exited his vehicle and escalated the argument into a physical assault on Johnson. Appellant, therefore, failed to prove the necessary elements to establish the affirmative defense of self-defense.

{¶ 21} Accordingly, for the reasons discussed above, we find that appellant has failed to demonstrate that the trial court clearly lost its way in addressing the stated testimony and evidence. As such, appellant's conviction for assault was not against the manifest weight of the evidence, and his sole assignment of error is overruled.

{¶ 22} Judgment affirmed.

S. POWELL, P.J., and RINGLAND, J., concur.