[Cite as *State v. Combs*, 2019-Ohio-190.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


|  |  |  |
|---|---|---|
| CITY OF HAMILTON, | : | CASE NO. CA2018-02-026 |
| Appellee, | : | O P I N I O N<br>1/22/2019 |
|  | : |  |
| - vs - |  |  |
|  | : |  |
| THOMAS COMBS, | : |  |
| Appellant. | : |  |


CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 17CRB04527-A


Thomas A. Dierling, City of Hamilton Prosecuting Attorney, 345 High Street, Hamilton, Ohio 45011, for appellee

Christopher P. Frederick, 300 High Street, Suite 550, Hamilton, Ohio 45011, for appellant


**M. POWELL, J.**

{¶ 1} Defendant-appellant, Thomas Combs, appeals his conviction in the Hamilton Municipal Court for sexual imposition and telecommunications harassment.

{¶ 2} J.G. (the "victim") is a teenage relative of Mercedes Paige, appellant's wife ("Paige"). On November 22, 2016, the victim was visiting at Paige's home. Appellant was upstairs and the victim was downstairs. Appellant began sending Snapchat text messages to the victim, telling her she was really pretty and asking her, "Do you have a boyfriend?"

"Can I come downstairs?" and "Am I allowed to kiss you?"[1] The texts made the victim nervous. Shortly thereafter, appellant came downstairs, approached the victim, began kissing her, and touched her breast over her clothing. When appellant tried to get under her shirt, the victim backed away. Appellant returned upstairs.

{¶ 3} Ten minutes later, appellant sent the victim a Snapchat photograph of his penis. The photograph made the victim feel "weird. It didn't feel right." The victim replied to appellant by texting, "Why did you send that?" Appellant did not initially respond but then asked, "Why don't you want to suck it?" Appellant sent additional texts, stating, "You ain't going to get in trouble," and warning the victim that if she told anyone, she would no longer be able to see his and Paige's young children. The victim was 13 years old; appellant was 24 years old. The photograph of appellant's penis and all of the foregoing texts between appellant and the victim were sent via Snapchat. The victim did not save them.

{¶ 4} In February 2017, the victim was sent to a lock down behavioral center because of her rebellious behavior and mistreatment of her siblings. While there, the victim disclosed the incident during a sex trafficking presentation. The victim subsequently told her mother who notified the Hamilton Police Department. On May 30, 2017, the victim was interviewed by Cecelia Freihofer, a social worker and forensic interviewer employed with the Mayerson Center for Safe and Healthy Children at Cincinnati Children's Hospital.

{¶ 5} In October 2017, appellant was charged by complaint with sexual imposition and telecommunications harassment. The matter proceeded to a bench trial. At trial, the victim, her mother, and Freihofer testified on behalf of the state. Appellant and his wife

---

1. Snapchat is a social media platform that allows participants to send pictures and text messages to each other. *See State v. Hunter*, 11th Dist. Lake No. 2017-L-081, 2018-Ohio-5325, ¶ 2. "[O]ne of its core concepts [is] that any pictures, videos or messages sent between users are only available for a short time before they are deleted or otherwise become inaccessible." *Bollinger v. Ohio Dept. of Edn.*, 3d Dist. Marion No. 9-18-07, 2018-Ohio-3714, ¶ 5, fn. 2.

testified on appellant's behalf.

{¶ 6} In addition to the events described above, the victim testified that in response to appellant's initial texts, she told him she did not want a boyfriend and that she did not care if he came downstairs as he lived in the house. She admitted replying that he could kiss her but explained she did so because she was nervous and did not know what to do. The victim stated she did not want a photograph of appellant's penis and did not ask for it. She further stated she knew the Snapchat texts and photograph came from appellant because the username said Tommy Combs. The victim testified she eventually told Paige that appellant had sent her photographs. Paige confronted appellant on the phone. Appellant denied sending photographs. The victim further testified appellant caught her smoking but stated it happened sometime after the "whole picture and stuff like."

{¶ 7} Freihofer testified as to what the victim told her during the forensic interview, including that appellant touched the victim's breast under her shirt, tried to put his hand down her pants, sent her a Snapchat photograph of his penis, and wanted her to perform oral sex on him. A videotape of the forensic interview was admitted into evidence at trial and later reviewed by the trial court.

{¶ 8} During the interview, the victim further told Freihofer that before appellant came downstairs, he sent her a Snapchat text telling her he was coming downstairs and "she better be ready." The victim did not know what he meant. Once downstairs, appellant kissed her, touched her breasts under her shirt, and started moving his hands "down there" before she walked away. After appellant returned upstairs, he sent her a Snapchat photograph of his penis, asked her "to suck his dick," and told her she would not get in trouble. The victim told Freihofer that the photograph and texts were all sent via Snapchat and that she did not save them. She eventually told Paige that appellant had sent her a photograph. However, Paige was angry at the victim because appellant "convinced her he

- 3 -

didn't do it."

{¶ 9} The victim's mother testified that while the victim had behavioral issues before the November 22, 2016 incident, the victim began engaging in self-harm around Christmas 2016 by cutting herself and "wanting to kill herself."

{¶ 10} Appellant and Paige both testified that after appellant came home from work one day around Thanksgiving 2016, they caught the victim smoking and threatened to tell her mother. Paige claimed that the victim told her about the Snapchat photograph within hours of being caught smoking and while appellant was away from the house. However, upon appellant's return, the victim told them she had lied about appellant to avoid being punished for smoking.

{¶ 11} Both appellant and Paige stated that they shared an iPhone in November 2016 and that it had a Snapchat account. Paige did not know appellant's username on the account; appellant stated his username did not include his first name. Both appellant and Paige stated that the iPhone was in Paige's possession whenever appellant was at work, including when the Snapchat texts and photograph were allegedly sent. Paige stated that when she needed to reach appellant, she would call his employer's phone. Paige had never seen that phone and did not know if it had a Snapchat account.

{¶ 12} Appellant generally denied the sexual imposition allegation. He further denied sending the Snapchat texts and photograph to the victim and denied having her phone number. Appellant further claimed that his employer's cellphone was a flip phone, and not a smartphone. Appellant explained that Snapchat can only be used on a smartphone.

{¶ 13} Following appellant's testimony, the defense rested, and the trial court took the matter under advisement. On January 18, 2018, the trial court found appellant guilty of sexual imposition and telecommunications harassment. In so holding, the trial court specifically stated it found the victim's trial testimony both credible and consistent with her

- 4 -

forensic interview at the Mayerson Center whereas the testimony of appellant and Paige was not credible and was "inconsistent in some ways with each other."

{¶ 14} Appellant now appeals, raising two assignments of error.

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE STATE PRESENTED INSUFFICIENT EVIDENCE TO CONVICT MR. COMBS OF TELECOMMUNICATIONS HARASSMENT [IN] VIOLATION OF R.C. 2917.21.

{¶ 17} Appellant argues that his conviction for telecommunications harassment is not supported by sufficient evidence because the state failed to prove he sent the texts with purpose to abuse, threaten, or harass the victim. Appellant asserts that the victim's testimony indicates the texts were simply sent as an invitation to engage in a sexual relationship.

{¶ 18} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry in reviewing a claim of insufficient evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 70.

{¶ 19} Appellant was convicted of telecommunications harassment in violation of R.C. 2917.21(B), which provides that "[n]o person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person."

{¶ 20} The critical inquiry of telecommunications harassment is not whether the recipient of the communication was in fact threatened, harassed, or annoyed by the communication, but rather, whether the purpose of the person who made the

communication was to abuse, threaten, or harass the person called. *State v. Kronenberg*, 8th Dist. Cuyahoga No. 101403, 2015-Ohio-1020, ¶ 15, citing *State v. Bonifas*, 91 Ohio App.3d 208, 211-212 (3d Dist.1993). In the absence of direct evidence, a defendant's purpose or intent to threaten, harass, or abuse may be established by the facts and circumstances surrounding the communication. *Kronenberg* at ¶ 15. A person acts purposely "when it is his specific intention to cause a certain result, or, when the gist of his offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶ 21} R.C. 2917.21(B) does not define "abuse," "threaten," or "harass." By applying the common everyday meaning of these words, "harass" is defined as "to exhaust," "to fatigue," or "to annoy persistently." *State v. Davidson*, 12th Dist. Preble No. CA2009-05-014, 2009-Ohio-6750, ¶ 16; *State v. Stanley*, 10th Dist. Franklin No. 06AP-65, 2006-Ohio-4632, ¶ 14.

{¶ 22} Upon reviewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found that appellant sent the Snapchat texts and photograph of his penis with purpose to harass the victim. Appellant, then 24 years old, began sending unsolicited Snapchat texts to the then 13-year-old victim, asking her if she had a boyfriend, if he could come downstairs, and if he was allowed to kiss her. The victim replied she did not want a boyfriend and did not care if appellant came downstairs as he lived in the house. Appellant came downstairs, kissed the victim, and touched her breast. However, as he tried to go further in touching the victim, she backed away from him, thus indicating his sexual advances were not welcomed. After appellant returned upstairs, he sent her a photograph of his penis. The victim replied by texting, "Why did you send that?" once again indicating his conduct was unwelcome. Unabated, appellant responded, "Why

don't you want to suck it?"

{¶ 23} Although R.C. 2917.21(B) "does not require multiple calls in order to constitute telephone harassment, the fact that the caller made numerous calls is often indicative of the caller's specific purpose to harass." *State v. Harshbarger*, 3d Dist. Auglaize No. 2-09-19, 2010-Ohio-4413, ¶ 19. The fact that appellant sent several texts and a photograph of his penis to the victim, notwithstanding the victim's objective manifestation that she did not welcome appellant's sexual advances and did not respond in kind, is plainly indicative of appellant's purpose to harass the victim. Appellant couching his communications as a mere invitation to engage in a sexual relationship does not negate the sufficiency of the evidence that the purpose of appellant's communications was an attempt to harass the victim into a sexual relationship.

{¶ 24} We therefore find that appellant's conviction for telecommunications harassment is supported by sufficient evidence. Appellant's first assignment of error is overruled.

{¶ 25} Assignment of Error No. 2:

{¶ 26} THE TRIAL COURT DID NOT RENDER APPROPRIATE VERDICTS IN LIGHT OF THE EVIDENCE PRESENTED AT TRIAL WHEN IT FOUND MR. COMBS GUILTY OF TELECOMMUNICATIONS HARASSMENT AND SEXUAL IMPOSITION BECAUSE THE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 27} Appellant argues that his conviction for telecommunications harassment and sexual imposition is against the manifest weight of the evidence because the only evidence of the alleged texts and sexual contact came from the victim's testimony which was inconsistent. Appellant further asserts the victim had a motive to lie about the incident after appellant and Paige caught her smoking and threatened to tell her mother.

{¶ 28} In considering whether a conviction is against the manifest weight of the evidence, a reviewing court "must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martino*, 12th Dist. Butler No. CA2017-09-139, 2018-Ohio-2882, ¶ 7. An appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case when the evidence presented at trial weighs heavily against the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *State v. Anderson*, 12th Dist. Butler No. CA2018-01-004, 2018-Ohio-4262, ¶ 15.

{¶ 29} Appellant was convicted of sexual imposition, in violation of R.C. 2907.06(A)(4), which provides in relevant part that "[n]o person shall have sexual contact with another, not the spouse of the offender, when [t]he other person is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of such person, and the offender is at least eighteen years of age and four or more years older than such other person." R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶ 30} There is no requirement that there be direct testimony regarding sexual arousal or gratification. *State v. Gesell*, 12th Dist. Butler No. CA2005-08-367, 2006-Ohio-3621, ¶ 25. Whether the touching was performed for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type, nature, and circumstances of the contact. *Id.* In determining the defendant's purpose, the trier of fact may infer what the defendant's motivation was in making the physical contact with the victim. *Id.*

{¶ 31} We find that the trial court did not lose its way and create a miscarriage of justice in finding appellant guilty of sexual imposition. The victim testified that appellant, then 24 years old, touched her breast while kissing her. She was 13 years old at the time. In addition to the victim's trial testimony, the state presented evidence that the victim told her mother about the abuse and discussed the same allegations during her forensic interview at the Mayerson Center. R.C. 2907.06(B), which provides that "[n]o person shall be convicted of a violation of this section solely upon the victim's testimony unsupported by other evidence," is therefore satisfied. *See State v. Bell*, 12th Dist. Clermont No. CA2008-05-044, 2009-Ohio-2335, ¶ 70; *State v. Chamberlain*, 12th Dist. Brown No. CA2013-04-004, 2014-Ohio-4619, ¶ 61. The foregoing evidence, if believed, was enough to convict appellant of sexual imposition.

{¶ 32} We further find that the trial court did not lose its way and create a miscarriage of justice in finding appellant guilty of telecommunications harassment. The victim testified appellant sent her several texts and a photograph of his penis from his Snapchat account but that she did not save them. As stated above, photographs or messages sent between Snapchat users are only available for a short time before they are deleted or otherwise become inaccessible. *Bollinger*, 2018-Ohio-3714 at ¶ 5, fn. 2. The victim testified the Snapchat texts and photograph came from appellant because the username said Tommy Combs. The victim admitted appellant and Paige caught her smoking but stated this occurred sometime after the November 22, 2016 incident. By contrast, appellant denied sending the Snapchat texts and photograph to the victim, stated his Snapchat username did not include his first name, and claimed the iPhone he shared with Paige was in Paige's possession when the Snapchat texts and photograph were allegedly sent.

{¶ 33} Appellant nevertheless challenges his convictions, asserting that the victim's testimony included "major discrepancies," and that the victim had a motive to lie about the

incident after appellant and Paige caught her smoking and threatened to tell her mother. The record reveals that the victim's trial testimony was inconsistent with her forensic interview as to whether appellant touched her breast over or under her clothing, and whether he subsequently tried to put his hand under her shirt or in her pants.

{¶ 34} The trial court was presented with two different versions of events. In finding appellant guilty of sexual imposition and telecommunications harassment, the trial court specifically stated it found the victim's trial testimony both credible and consistent with her forensic interview at the Mayerson Center whereas the testimony of appellant and Paige was not credible and was "inconsistent in some ways with each other." Appellant's conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony. *See State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. When there is a conflict in the testimony of witnesses, it is for the trier of fact to determine the weight and credibility to be given to such evidence. *State v. Marcum*, 12th Dist. Butler No. CA2017-05-057, 2018-Ohio-1009, ¶ 31. As the trier of fact, the trial court was in the best position to see and hear the witnesses, and observe their demeanor, equivocation, and candor when it determined the weight to be given their testimony. *State v. Gross*, 12th Dist. Preble No. CA2018-01-001, 2018-Ohio-4557, ¶ 43.

{¶ 35} We therefore find that appellant's conviction for sexual imposition and telecommunications harassment was not against the manifest weight of the evidence. *State v. Paluga*, 12th Dist. Butler No. CA2002-02-041, 2002-Ohio-6876; *State v. Dulaney*, 180 Ohio App.3d 626, 2009-Ohio-79 (3d Dist.). Appellant's second assignment of error is overruled.

**{¶ 36}** Judgment affirmed.

RINGLAND, P.J. and PIPER, J., concur.