[Cite as *State v. Ellis*, 2022-Ohio-2330.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2021-12-065 |
| Appellee, | : | O P I N I O N<br>7/5/2022 |
| | : | |
| - vs - | : | |
| | : | |
| JAMES R. ELLIS, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 2021 CRB 2702

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas A. Horton, Assistant Prosecuting Attorney, for appellee.

W. Stephen Haynes, Clermont County Public Defender, and Robert F. Benintendi, Assistant Public Defender, for appellant.

**M. POWELL, P.J.**

{¶ 1} Appellant, James Ellis, appeals his conviction and sentence in the Clermont County Municipal Court for menacing and aggravated trespass.

{¶ 2} On July 26, 2021, a complaint was filed in the trial court charging appellant with one count of menacing in violation of R.C. 2903.22(A), a fourth-degree misdemeanor, and one count of aggravated trespass in violation of R.C. 2911.211(A)(1), a first-degree

misdemeanor. The charges stemmed from allegations that following an apparent road-rage incident, appellant followed Bessie Arnett to her home, parked in her driveway, angrily approached her, and screamed at her, calling her a bitch and twice warning her, "I know where you live, I'll be back," causing Barnett to fear for her safety.

{¶ 3} On October 7, 2021, following a one-day bench trial, the trial court found appellant guilty of menacing and aggravated trespass as charged. A presentence-investigative report ("PSI") was ordered. On October 25, 2021, the trial court merged the menacing charge into the aggravated trespass charge, sentenced appellant to 160 days in jail, with 158 days suspended and credit for two days served, and placed him on community control for a period of three years. As pertinent here, the conditions of community control prohibited appellant from consuming alcohol and illegal drugs and from entering any establishment whose primary source of income is derived from alcohol sales, and further required him to successfully complete a substance abuse treatment program, attend sober support meetings, submit to random toxicology screening, and comply with SCRAM (Secure Continuous Remote Alcohol Monitoring) as directed by the Adult Probation Department.

{¶ 4} Appellant now appeals his conviction and sentence, raising two assignments of error.

{¶ 5} Assignment of Error No. 1:

{¶ 6} THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILT BECAUSE SUCH VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 7} Appellant argues that his conviction for menacing and aggravated trespass is against the manifest weight of the evidence because the state failed to prove he knowingly caused Arnett to believe he would cause her physical harm.

- 2 -

{¶ 8}   In reviewing a manifest weight of the evidence challenge, an appellate court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Martino*, 12th Dist. Butler No. CA2017-09-139, 2018-Ohio-2882, ¶ 7.  An appellate court will overturn a conviction as being against the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*

{¶ 9}   Appellant was convicted of menacing in violation of R.C. 2903.22(A), which provides that "[n]o person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."  The reach of R.C. 2903.22(A) is not so narrow as to restrict only conduct constituting an "overt threat." *State v. Intihar*, 12th Dist. Warren No. CA2015-05-046, 2015-Ohio-5507, ¶ 10.  "Rather, the statute proscribes a much broader spectrum of behavior by criminalizing any conduct engaged in by a person knowing that such conduct would cause another to believe the offender will cause the other person, or the other's family, physical harm." *Id.*  This "can encompass a present state of fear of bodily harm and a fear of bodily harm in the future." *State v. Scott*, 7th Dist. Mahoning No. 07 MA 152, 2009-Ohio-4961, ¶ 20.

{¶ 10} Appellant was also convicted of aggravated trespass in violation of R.C. 2911.211(A)(1), which provides that "[n]o person shall enter or remain on the land or premises of another with purpose to commit on that land or those premises a misdemeanor, the elements of which involve causing physical harm to another person or causing another person to believe that the offender will cause physical harm to that person."  The misdemeanor involved here is menacing.

- 3 -

{¶ 11} Arnett, her daughter E.C., and Deputy James Kirker, one of the two deputies dispatched to the scene, testified on behalf of the state; appellant testified on his own behalf. The evidence shows that on July 26, 2021, appellant was driving his pick-up truck home after purchasing two bottles of Coca-Cola. As he drove, appellant was drinking from one of the bottles which was wrapped in a brown paper bag to keep it cold. Arnett was driving home on her lunch break when she caught up with appellant's truck. Appellant was driving slowly. Instead of passing appellant, Arnett remained behind him. Arnett testified that appellant would speed up and then brake-check her. Appellant testified that Arnett was tailgating him and appeared to be filming him with her cellphone. As appellant turned into his driveway, Arnett drove past, screaming at him. Concerned about Arnett's conduct and believing this was the second encounter he had had with Arnett's car, appellant decided to follow her and discuss with her whether there was a problem. Appellant pulled out of his driveway and began following Arnett. Fearing for her safety and that of her daughters who were home, Arnett called 9-1-1 while driving home. Once in her driveway, Arnett remained on the line with dispatch, documenting her movements.

{¶ 12} According to Arnett and E.C., appellant aggressively pulled into Arnett's driveway right after she pulled in, nearly striking E.C. who was standing near the entrance of the driveway. Appellant exited his truck and spoke with E.C. in a cordial manner. Fearing for E.C.'s safety, Arnett yelled at appellant to get away from E.C. Soon after, appellant began walking toward Arnett, yelling and cussing and holding the Coca-Cola glass bottle. Arnett and E.C. both testified they feared appellant might attack them with it. Arnett repeatedly told appellant to leave her property, but he failed to do so. In an effort to fend-off appellant, Arnett began throwing handfuls of gravel at him. Appellant called her a "fucking bitch" and told her, "I know where you live. I'll be back."

{¶ 13} Appellant then got back into his truck, pulled out onto the road and stopped,

- 4 -

exited his truck, and reentered Arnett's driveway. Arnett told appellant to leave. As he continued to approach her, Arnett threw a brick at him. The brick missed appellant and struck his truck. Appellant borrowed a cellphone from a motorist blocked behind his truck and called the police. Deputy Kirker and another deputy responded to the scene. Deputy Kirker described Arnett as visibly shaken. He testified that appellant was very loud and cussing and described his behavior as aggressive. Deputy Kirker testified that as the other deputy was speaking to appellant, appellant stepped around him and started walking down the driveway, pointing at Arnett and yelling, "Now I know where you live."

{¶ 14} Appellant presented a different version of the events. Appellant denied he aggressively pulled in Arnett's driveway or almost struck E.C. Appellant testified he parked near the entrance of the driveway, exited his truck, cordially greeted E.C., and told her he wanted to speak with her mother about why she was taking pictures of him while driving on the road. Appellant testified that Arnett then came out of the garage and started throwing gravel at him, striking his truck. Appellant told Arnett, "Lady, you're going to pay for this damage," but Arnett continued to throw gravel at him and cursing him. After Arnett threw a third handful of gravel at him, appellant called her a bitch and said, "You're crazy. I know where you live. You're going to pay for the damage * * * to my vehicle." Appellant then got back into his truck and backed out of the driveway onto the road. As he began to drive away, Arnett threw a brick at him, striking his truck. Appellant stopped his truck, exited, borrowed a cellphone from a passing motorist, and called 9-1-1. As appellant was on the phone with the 9-1-1 dispatcher, Deputy Kirker and the other deputy arrived on the scene.

{¶ 15} On cross-examination, appellant denied he was angry at Arnett and stated he only wanted to have a conversation with her. Appellant asserted he backed out of the driveway to go home and get away from the situation; however, Arnett threw the brick at him. Appellant then exited his truck and borrowed a motorist's cellphone. Appellant claimed

that once the deputies were on the scene, he stayed with his truck on the road. Appellant denied he stepped around the second deputy, denied he reentered Arnett's driveway, and asserted that Arnett's, E.C.'s, and Deputy Kirker's testimony to the contrary was a lie. Appellant further denied yelling at Arnett while the deputies were on the scene. Appellant admitted Arnett asked him to leave her property.

{¶ 16} The recording of Arnett's 9-1-1 call was played at trial and admitted into evidence. Appellant can be heard shouting shortly after talking to E.C. and calling Arnett a bitch. Arnett can be heard repeatedly asking appellant to leave her property.

{¶ 17} Upon a thorough review of the record, we find that appellant's conviction for menacing and aggravated trespass is not against the manifest weight of the evidence. Appellant, a stranger to Arnett, followed her home, parked in her driveway, angrily approached her with a glass bottle in his hand, and remained on her property as she repeatedly told him to leave. During this encounter, appellant yelled at Arnett, called her a "fucking bitch," and told her, "I know where you live. I'll be back." Subsequently, appellant pulled his truck out of the driveway, stopped his truck on the road, exited, reentered Arnett's property, went around a deputy, and pointing at Arnett, yelled "Now, I know where you live." Arnett testified appellant's presence and behavior caused her to fear for her safety and she was visibly shaken at the scene.

{¶ 18} Although appellant believes Arnett lacked credibility, it is well established that it is the trier of fact who makes determinations of credibility and the weight to be given to the evidence presented at trial. *Martino*, 2018-Ohio-2882 at ¶ 13. It is equally well established that when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the testimony of the state's witnesses. *Id.*; *State v. Schenk*, 12th Dist. Preble No. CA2021-02-003, 2022-Ohio-430, ¶ 21. In finding appellant guilty of menacing and aggravated trespass, the trial

- 6 -

court specifically found the testimony of Arnett, E.C., and Deputy Kirker more credible than appellant's. "As the trier of fact is in the best position to judge the credibility of the witnesses, we will not disturb the trial court's finding in regard to which version of events was credible, and which was not." *Martino* at ¶ 13.

{¶ 19} Appellant's first assignment of error is overruled.

{¶ 20} Assignment of Error No. 2:

{¶ 21} THE TRIAL COURT ERRED IN IMPOSING INTENSIVE TREATMENT COMMUNITY CONTROL SANCTIONS.

{¶ 22} Appellant argues the trial court abused its discretion when it imposed conditions of community control pertaining to alcohol and illegal drugs.

{¶ 23} When sentencing a misdemeanor offender to community control, a trial court may impose residential, nonresidential, and financial sanctions and any other conditions the trial court considers appropriate. R.C. 2929.25(A)(1); *State v. Tobin*, 10th Dist. Franklin Nos. 11AP-776 and 11AP-777, 2012-Ohio-1968, ¶ 6. R.C. 2929.27(A) delineates specific nonresidential sanctions a trial court may impose. In addition to these sanctions, the trial court "may impose any other sanction that is intended to discourage the offender or other persons from committing a similar offense if the sanction is reasonably related to the overriding purposes and principles of misdemeanor sentencing." R.C. 2929.27(C).

{¶ 24} We review a trial court's imposition of community control sanctions under an abuse-of-discretion standard. *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, ¶ 10. However, a trial court's discretion in imposing community control sanctions is not limitless. *Id.* at ¶ 11. "Generally, a court will not be found to have abused its discretion in fashioning a community-control sanction as long as the condition is reasonably related to the probationary goals of doing justice, rehabilitating the offender, and insuring good behavior." *State v. Chapman*, 163 Ohio St.3d 290, 2020-Ohio-6730, ¶ 8. "Further, a condition cannot

be overly broad so as to unnecessarily impinge upon the probationer's liberty." *Id.*

{¶ 25} In determining whether a community control sanction is related to the three probationary goals above, courts must "consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." *State v. Jones*, 49 Ohio St.3d 51, 53 (1990); *Talty* at ¶ 12; *Chapman* at ¶ 23. All three prongs must be satisfied for a reviewing court to find that the trial court did not abuse its discretion. *State v. Cintron*, 8th Dist. Cuyahoga No. 110600, 2022-Ohio-305, ¶ 21; *State v. White*, 10th Dist. Franklin No. 14AP-1027, 2015-Ohio-3844, ¶ 5.

{¶ 26} The PSI indicates that appellant had a substantial criminal record between 1979 and 1998 and that he served prison terms in 1992 and 1998. Appellant admitted that he is an alcoholic, that his past criminal conduct up to his second prison term in 1998 was fueled by his alcoholism, and that he finally successfully completed a substance abuse treatment while in prison. Prior to the offenses at bar, the only offense for which appellant had been convicted since 1998 was a registration violation in 2009. Appellant was diagnosed with PTSD, admits he has mental health issues and anger management problems, and is currently engaged in mental health counseling. Appellant stated he has not consumed alcohol since 1998. A toxicology screen conducted by the probation department on October 18, 2021, was negative for all substances tested.

{¶ 27} At trial, Deputy Kirker testified that no alcoholic beverages were found in appellant's possession at the time of the offenses. The glass bottle held by appellant and believed by Arnett to be a beer bottle was in fact a Coca-Cola bottle. Deputy Kirker further testified there was no odor of an alcoholic beverage on appellant's person and no indicia appellant was intoxicated. Appellant testified he last drank alcohol on August 10, 1998. At

sentencing, appellant's counsel informed the trial court that appellant became sober when he went to prison in 1998 and that there is no evidence he has consumed alcohol since.

{¶ 28} We find that the alcohol and drug related conditions of community control imposed by the trial court are not reasonably related to rehabilitating appellant, have *no* relationship to the crimes of menacing and aggravated trespass of which appellant was convicted, and do not relate to conduct which is reasonably related to future criminality. It is undisputed that the case at bar did not involve alcohol or drugs. There is no allegation or evidence in the record that alcohol or drug use was a factor. While the state argues that the conditions imposed by the trial court are appropriate given appellant's "prior criminal history" linking alcohol abuse with criminality, such history is remote to a degree as to have no relevance to sentencing here. The PSI does not indicate, nor is the state arguing, that appellant has a current alcohol and drug problem. The alcohol and drug related conditions of community control bear absolutely no relation to any of the circumstances surrounding the case. *South Euclid v. Bickerstaff*, 8th Dist. Cuyahoga No. 107526, 2019-Ohio-2223, ¶ 25.

{¶ 29} The trial court, therefore, abused its discretion in prohibiting appellant from entering any establishment whose primary source of income is derived from alcohol sales and in ordering appellant to successfully complete a substance abuse treatment program, attend sober support meetings, submit to random toxicology screening, and comply with SCRAM, as conditions of his community control sanctions. *Id.*

{¶ 30} Appellant's second assignment of error is sustained.

{¶ 31} Judgment affirmed as to the conviction for menacing and aggravated trespass and reversed and remanded to the trial court to vacate the community control conditions prohibiting appellant from entering any establishment whose primary source of income is derived from alcohol sales and requiring him to successfully complete a substance abuse

treatment program, attend sober support meetings, submit to random toxicology screening, and comply with SCRAM. *Talty*, 2004-Ohio-4888 at ¶ 25; *Cintron*, 2022-Ohio-305 at ¶ 26; *Bickerstaff*, 2019-Ohio-2223 at ¶ 27.

S. POWELL and PIPER, JJ., concur.