[Cite as *State v. Chambers*, 2025-Ohio-1320.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

STATE OF OHIO,                                    :

    Appellee,                                      :            CASE NO. CA2024-06-034

    - vs -                                            :            O P I N I O N
                                                                 4/14/2025
                                                         :

NATHANIEL JAMES WILSON                 :
CHAMBERS,
                                                         :
    Appellant.

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 2024CRB000196

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Craig Newburger, for appellant.

**BYRNE, J.**

{¶ 1} Nathaniel Chambers appeals from his conviction for domestic violence. Specifically, he challenges the condition of community control prohibiting him from having contact with his children for a period of five years. For the reasons that follow, we reverse the sentence and remand for further proceedings.

## I. Factual and Procedural Background

{¶ 2} The facts giving rise to this appeal are uncomplicated. Chambers and Alyssa Krebs are unmarried and share two children, B.C., age five, and A.C., age three (at the time of these events). On April 13, 2024, while the children were in Chambers's care, he left them with a friend's parents to socialize elsewhere. Later that evening, B.C. awakened, became frightened, and called his mother. After an unsuccessful attempt by Krebs to retrieve her children, Chambers and his girlfriend subsequently retrieved the children from where they were sleeping, placed them in a vehicle, and drove to Krebs's location. The girlfriend then assaulted Krebs while Chambers watched. When Krebs attempted to reach her children, Chambers pushed her with such force that she fell face-first onto concrete, knocking her unconscious. The children witnessed these events from the vehicle.

{¶ 3} Following a bench trial, Chambers was convicted of domestic violence, a first-degree misdemeanor. The trial court sentenced him to 180 days in jail, with 90 days suspended, and imposed five years of community control. The court ordered that Chambers have no contact with Krebs or his children for the duration of his community control.

{¶ 4} Chambers appealed.

## II. Analysis

{¶ 5} Chambers presents a single assignment of error:

THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE BY IMPOSING A FIVE YEAR NO CONTACT ORDER BETWEEN APPELLANT AND HIS CHILDREN.

{¶ 6} Chambers challenges the trial court's imposition of a five-year no-contact order with his minor children as a condition of community control, arguing this restriction constitutes an abuse of discretion.

**{¶ 7}** Ohio law authorizes courts to impose "appropriate" conditions under a community-control sanction for misdemeanor offenses. R.C. 2929.25(A)(1)(a). While trial courts possess substantial discretion in fashioning these conditions, such discretion is not boundless. *State v. Jones*, 49 Ohio St.3d 51, 52 (1990). We review these determinations for abuse of that discretion. *State v. Ellis*, 2022-Ohio-2330, ¶ 24 (12th Dist.), citing *State v. Talty*, 2004-Ohio-4888, ¶ 10.

**{¶ 8}** The framework established in *Jones* provides the standard for challenges to community-control conditions. *See State v. Hause*, 2009-Ohio-548, ¶ 8 (12th Dist.). A valid condition must advance the tripartite aims of community control: rehabilitation, the administration of justice, and ensuring good behavior. *Id.*; R.C. 2929.25(C)(2) ("In the interests of doing justice, rehabilitating the offender, and ensuring the offender's good behavior, the court may impose additional requirements on the offender."). This requires courts to "'consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation.'" *Ellis* at ¶ 25, quoting *Jones* at 53. All three prongs must be satisfied for a reviewing court to uphold a trial court's community-control condition. *Id.* Also, the condition "'cannot be overly broad so as to unnecessarily impinge upon the [offender's] liberty.'" *Talty* at ¶ 13, quoting *Jones* at 52.

**{¶ 9}** Chambers does not contest the court's authority to prohibit him from contact with Krebs, the domestic-violence victim in this case. Rather, he challenges the extension of that prohibition to his children, noting they were not victims, no finding of abuse or neglect was made, and the victim herself characterized him as "a wonderful dad." The State counters that Chambers deliberately entangled his children in the offense by removing them from their beds and transporting them to a location where he anticipated

a confrontation.

{¶ 10} We and other Ohio appellate courts have upheld restrictions on parental rights when they satisfy the *Jones* criteria. *See, e.g., State v. Emery*, 2015-Ohio-1487, ¶ 30 (12th Dist.) (two-year no-contact condition imposed on mother upheld where the child was the victim, as it related to the crime and served the purpose of protecting the child from future abuse while mother underwent counseling); *State v. Sommerfeld*, 2004-Ohio-6101, ¶ 45 (8th Dist.) (sustaining a prohibition on custodial parenthood where the offense was child endangering); *State v. McClure*, 2005-Ohio-777, ¶ 12-13 (1st Dist.) (affirming a no-contact condition where a guardian attempted to kill a child, as it related to the crime and served the purpose of protecting the child from future domestic violence incidents while guardian was being rehabilitated).

{¶ 11} Conversely, courts have found abuses of discretion when no-contact conditions fail the *Jones* test. *See, e.g., Cleveland v. Cornely*, 2021-Ohio-689, ¶ 26-27 (8th Dist.) (no-contact condition with defendant's children who observed incident of domestic violence against the mother, as the condition was not related to that offense, and the no-contact order was of an indefinite duration); *State v. Marcum*, 2012-Ohio-572 (4th Dist.) (striking down a no-contact condition between spouses for misuse of 911, as it was not related to rehabilitating the wife because the condition failed to ensure that she only use 911 for legitimate purposes); *Univ. Hts. v. Roders*, 1999 Ohio App. LEXIS 3862 (8th Dist. Aug. 19, 1999) (invalidating a no-contact condition with wife and children for telephone harassment of police, as it was not related to the crime because wife and children were not victims and prohibiting appellant from contacting them would not prevent future harassing phone calls); *State v. Brillhart*, 129 Ohio App.3d 180 (9th Dist. 1998) (overturning a two-year prohibition on contact with children where the offense was domestic violence against the mother, as the condition was unrelated to the crime, even

though one of the children witnessed the act of domestic violence).

{¶ 12} We acknowledge that the present case is distinguishable from *Cornely*, as the State contends, in that the no-contact condition here has a definite duration. Also, Chambers's conduct—deliberately transporting his drowsy children to what he likely knew would be a volatile confrontation—was undoubtedly more egregious than the scenario in *Cornely*, where children merely happened to be present during an incident of domestic violence. Yet certain similarities to *Cornely* remain. The children were not victims of the offense. No evidence suggests Chambers has ever abused his children or poses a threat to them. Indeed, the victim herself—uniquely positioned to assess his parental fitness— described him as "a wonderful dad." And as the Eighth District has noted, "a general, unsupported concern for the 'safety of the people involved' is an insufficient basis to justify the imposition of a community control condition that would completely separate a father and his three young children for five years." *City of Lakewood v. Radostitz*, 2018-Ohio-1971, ¶ 21 (invalidating a five-year no-contact condition after defendant was convicted of assault on the mother, as the condition was not reasonably related to the assault, the children had no involvement in the incident, nor were they present during the altercation).

{¶ 13} The trial court's no-contact condition here falters most significantly by failing to satisfy the first *Jones* factor: It is not reasonably related to rehabilitating Chambers.[1] A categorical five-year prohibition on parent-child contact, devoid of mechanisms for modification upon completion of therapeutic or rehabilitative measures, serves punishment rather than rehabilitation. In fact, when Chambers's counsel sought guidance on lifting or modifying the no-contact order, the trial court stated, "I have no idea what that's going to entail at this point in time. I guess we have five years to figure it out." This

---

1. Chambers's conduct in bringing the children to what he likely knew would be a volatile confrontation *could perhaps* satisfy the second and third *Jones* factors, but we do not reach or decide that issue.

statement demonstrates the absence of a rehabilitative rationale. While protecting children's welfare is unquestionably important, and we understand the trial court's concern for the safety of Chambers's children, a community control condition that effectively terminates a parent-child relationship for five years, particularly with such young children, demands more precise tailoring. To paraphrase *Cornely*, under these circumstances, fashioning a condition that resulted in the five-year complete separation of a father from his young children was not reasonable or appropriate. *See Cornely* at ¶ 22.

{¶ 14} This is not to suggest that all potential contact restrictions would be inappropriate. Given Chambers's demonstrated lapses in judgment regarding his children's welfare, carefully tailored restrictions may well be necessary to protect both the children and their mother. *See Emery*, 2015-Ohio-1487, at ¶ 5, 30 (no contact with children unless invited by child protective services or the juvenile court). If such restrictions are appropriate, they must be tethered to rehabilitation, not punishment, and must also satisfy the other *Jones* elements.

{¶ 15} The constitutional dimensions of this case, though not explicitly raised by Chambers, merit acknowledgment. A parent's interest in the care, custody, and control of his children represents "perhaps the oldest of the fundamental liberty interests recognized by" the U.S. Supreme Court. *Troxel v. Granville*, 530 U.S. 57, 65 (2000). Government intrusion on this right must be narrowly tailored to serve a compelling state interest. *See id.* at 65-66. While no-contact conditions implicating parent-child separation may withstand constitutional scrutiny when designed to protect children from harm, the trial court's five-year condition with no explicit modification mechanism strains the boundaries of constitutional tailoring. *See State v. Brillhart*, 129 Ohio App.3d 180, 186 (9th Dist. 1998). It risks severing Chambers's relationship with his children during their formative

years—potentially harming the very individuals the court aims to protect.

### III. Conclusion

**{¶ 16}** We conclude that the trial court abused its discretion in imposing the five-year blanket no-contact-with-the-children condition of community control. Therefore, Chambers's assignment of error is sustained. Because the condition is invalid, we vacate that portion of the trial court's sentencing order. *See Talty*, 2004-Ohio-4888, at ¶ 25. The trial court's judgment is reversed, and this case is remanded for resentencing.

HENDRICKSON, P.J., and POWELL, J., concur.