[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Chapman*, Slip Opinion No. 2020-Ohio-6730.]

<u>NOTICE</u>

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-6730

THE STATE OF OHIO, APPELLEE, *v.* CHAPMAN, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Chapman*, Slip Opinion No. 2020-Ohio-6730.]**

*Criminal law—Community-control conditions—Procreation—Nonsupport of dependents—A court must consider whether a community-control condition is reasonably related to rehabilitating the offender, has some relationship to the crime of which the offender was convicted, and relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation—Court of appeals' judgment reversed and cause remanded to the trial court.*

(No. 2019-1410—Submitted July 21, 2020—Decided December 18, 2020.)

APPEAL from the Court of Appeals for Lorain County, No. 18CA011377, 2019-Ohio-3535.

_____

**DEWINE, J.**

{¶ 1} A man was convicted for failing to pay child support to the mothers of his 11 children and sentenced to community control. One of the conditions of community control imposed by the court was that the man "make all reasonable efforts to avoid impregnating a woman" during his sentence. The question before us is whether that condition was appropriate. We conclude that it was not.

## I. Background

{¶ 2} London Chapman was charged with 11 felony counts of nonsupport of dependents in 6 separate criminal cases as a result of his failure to pay child support. Chapman's sentence included several standard conditions of community control, including that he undergo alcohol and drug screenings, obtain and verify employment, and pay restitution. In addition, the court ordered Chapman "to make all reasonable efforts to avoid impregnating a woman during the community control period or until such time that [he] can prove to the Court that he is able to provide support for his children he already has and is in fact supporting the children or until a change in conditions warrant the lifting of [this] condition."

{¶ 3} Chapman appealed, asserting that the condition was impermissible because it was not reasonably related to a rehabilitative purpose and because it violated his constitutional right to procreate. The Ninth District Court of Appeals rejected Chapman's nonconstitutional argument, concluding that the anti-procreation condition satisfied the reasonableness test enunciated by this court in *State v. Jones*, 49 Ohio St.3d 51, 52-53, 550 N.E.2d 469 (1990). *State v. Chapman*, 9th Dist. Lorain Nos. 16CA010969, 16CA010970, 16CA010971, 16CA010972, 16CA010973, and 16CA010974, 2018-Ohio-343, ¶ 4-11. The court of appeals declined to consider Chapman's constitutional argument on the basis that it had not been addressed by the trial court. *Id.* at ¶ 12. Instead, it remanded the matter to the trial court to consider that issue in the first instance. *Id.* at ¶ 12-13.

{¶ 4} On remand, the trial court issued a 19-page judgment entry addressing Chapman's constitutional arguments, the bulk of which was devoted to providing

examples of other fundamental rights that could be limited by community-control conditions. It determined that while the procreation prohibition impacted a fundamental right, the condition was constitutional because it was narrowly tailored to serve the state's interest in preventing Chapman from fathering more children than he could support. The trial court, thus, reimposed the same condition. In doing so, it noted that it could "imagine any number of *reasonable* efforts" by which Chapman could "avoid impregnating a woman during the community control period," but it declined to provide any guidance as to what would constitute reasonable efforts. (Emphasis sic.)

{¶ 5} Chapman appealed a second time. The court of appeals first determined that res judicata barred it from reconsidering Chapman's nonconstitutional challenge to the procreation prohibition. 2019-Ohio-3535, ¶ 8. Turning to Chapman's constitutional argument, the court rejected Chapman's argument that the procreation prohibition should be subjected to strict-scrutiny analysis. Because it did not find heightened scrutiny to be appropriate, and because it had already rejected Chapman's argument that the condition was not reasonably related to a rehabilitative purpose, the court affirmed his sentence. *Id*. at ¶ 12.

{¶ 6} We accepted Chapman's discretionary appeal to determine whether the procreation prohibition impermissibly infringes upon Chapman's constitutional rights. *See* 157 Ohio St.3d 1534, 2020-Ohio-122, 137 N.E.3d 1194.

## II. Analysis

{¶ 7} Before we decide whether the procreation prohibition is constitutional, we need to establish the proper standard for reviewing the condition. Courts imposing community control have broad discretion to impose residential, nonresidential, and financial sanctions. *See* R.C. 2929.15(A)(1). If a court imposes a nonresidential sanction, it must order the offender to abide by the law and not leave the state without the permission of his probation officer and abide by "any other conditions of release * * * that the court considers appropriate." *Id.*

{¶ 8} Generally, a court will not be found to have abused its discretion in fashioning a community-control sanction as long as the condition is reasonably related to the probationary goals of doing justice, rehabilitating the offender, and insuring good behavior. *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 12. Further, a condition " 'cannot be overly broad so as to unnecessarily impinge upon the probationer's liberty.' "[1] *Id.* at ¶ 13, quoting *Jones*, 49 Ohio St.3d at 52, 550 N.E.2d 469.

A. *We Reject Chapman's Argument that We Should Apply Strict Scrutiny*

{¶ 9} Chapman asks us to carve out an exception to the general standard of reasonableness review. He argues that because the anti-procreation condition impinges upon a fundamental right, it should be assessed under a strict-scrutiny standard, by which the government must show that the condition is narrowly tailored to serve a compelling governmental interest.

{¶ 10} There is no question that procreation is a fundamental right protected under the United States Constitution. *Talty* at ¶ 8, citing *Skinner v. Oklahoma*, 316 U.S. 535, 541, 62 S.Ct. 111, 86 L.Ed. 165 (1942). And the trial court's requirement that Chapman take "all reasonable efforts to avoid" fathering more children while on community-control sanctions limits that right. The crucial question is how we review conditions of sentencing that limit a fundamental right.

{¶ 11} Criminal sanctions, by their very nature, implicate an offender's exercise of his fundamental rights. A deprivation of liberty is an inherent part of a criminal sentence. A term of imprisonment limits fundamental rights that are inconsistent with an individual's "status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817,

---

1. In 1995, community control replaced probation as a possible sanction under Ohio's felony-sentencing law. *Talty* at ¶ 16. We have explained that "community control is the functional equivalent of probation" and that there is "no meaningful distinction between community control and probation for purposes of reviewing the reasonableness of their conditions." *Id.*

822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Thus, the requirement of prison security justifies restrictions on many fundamental rights: prisoners lose their right to travel, they can't bring a firearm with them to prison, the warden doesn't need a warrant to search their cells, and their rights to association and speech are curtailed.

{¶ 12} So too with those offenders sentenced to probation. An individual sentenced to probation—or community control—does not possess the absolute liberty enjoyed by the general population, but rather finds his liberty dependent upon the conditions and restrictions of his probation. *See Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). "Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." *United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001).

{¶ 13} Indeed, someone who commits a crime and is duly convicted surrenders key aspects of his liberty. Our constitutions command that no person shall be deprived of life, liberty, or property without due process of the law. Fourteenth Amendment to the U.S. Constitution; Ohio Constitution, Article I, Sections 1, 2, and 16. But when a person has broken the laws of society and has been afforded due process of the law, the government may legitimately deprive that person of his liberty.

{¶ 14} For that reason, we have never applied a strict-scrutiny analysis to a criminal punishment. We don't review a prison sentence and ask if a particular sentence imposed is narrowly tailored to advance a compelling governmental interest. To the contrary, we have recognized that certain restrictions on fundamental rights are inherent in criminal punishment.

{¶ 15} Chapman argues that the right to procreate is unique because it finds its foundation in the right to privacy in the United States Constitution. *See, e.g.*, *Eisenstadt v Baird*, 405 U.S. 438, 453, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972)

(stating that the right to privacy protects against governmental intrusion affecting the decision to bear a child). But privacy rights—even those explicitly enumerated in the Ohio and United States Constitutions—have never been subject to a strict-scrutiny analysis when limited by a probation condition. Thus, an offender can be subject to warrantless searches of his home while on probation because he is not entitled to the same liberty interests as other citizens. *Knights*, 534 U.S. at 118-119, 122 S.Ct. 587, 151 L.Ed.2d 497. And such a limitation is a permissible condition of probation if it reasonably furthers the goals of rehabilitation and protecting society. *Id.* at 119. If a court can uphold a probation condition limiting a defendant's entitlement to the protections of an enumerated constitutional right because the condition is reasonable, there is little basis to hold Chapman's right to privacy through procreation to a higher standard.

{¶ 16} In sum, because convicted criminals serving their sentences enjoy diminished liberty interests when compared with the general population, a trial court can impose community-control sanctions that limit the offender's fundamental rights, provided that such limitations further the statutory goals of community control and are not overbroad. *See id.*; *see also Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.3d 1201, at ¶ 12-13.

   B. *We Apply the Reasonable-Relationship Test Set Forth in* State v. Jones

{¶ 17} Thus, rather than strict scrutiny, the starting place for our review is the test we announced in *Jones*, which looks to whether a community-control condition reasonably relates to the offense at issue, furthers the twin goals of rehabilitation and justice, and does not cause a greater deprivation of liberty than is necessary to achieve those penological goals. 49 Ohio St.3d at 53, 550 N.E.2d 469.

{¶ 18} That said, trial courts should not be unmindful of a condition's impact on a fundamental right. Some deprivations of liberty are fundamental to criminal punishment: by virtue of being locked up in prison, certain constitutional rights of a prisoner are necessarily compromised. So too with a community-control

sanction; inherent in being supervised while allowed to remain in the community are restrictions on travel, limitations on association, restrictions on firearms ownership, being subject to warrantless searches, and the like. Other restrictions, however, are not necessarily intrinsic to community control but are tailored to the rehabilitation of the offender.

{¶ 19} When it comes to conditions of this second type, courts should take particular care to ensure that the sanctions are appropriately crafted to meet a proper rehabilitative purpose. This is not because the Ohio and United States Constitutions impose an enhanced-scrutiny requirement, but rather because we call certain rights fundamental for a reason: these are the rights that by enshrinement in our constitutions we as a society have chosen to provide the most protection for. As a result, a probation condition of this type that implicates a fundamental right imposes a more severe punishment than one that does not. Because the punishment is more severe, the justification must be more exacting so as to ensure that the condition does not limit the probationer's liberty more than is necessary to achieve the goals of community control. *See Jones* at 52-53.

{¶ 20} Our caselaw reflects this treatment of nonstandard community-control conditions that impact fundamental rights. In *Jones*, we explained that a probation condition "cannot be overly broad so as to unnecessarily impinge upon the probationer's liberty." 49 Ohio St.3d at 52, 550 N.E.2d 469. At issue in that case was a probation condition that prohibited the offender from communicating with anyone under the age of 18 who was not a member of his immediate family. *Id.* at 53. We upheld the condition, but only after modifying its scope. Noting that a literal enforcement of the condition could be problematic, we determined that it "should reasonably be interpreted as meaning an illicit, or potentially unlawful association or communication." *Id*. at 54-55.

{¶ 21} In *Talty*, we dealt with a community-control condition also requiring the offender to make reasonable efforts to avoid conceiving a child; but unlike in

this case, there was no specific provision for lifting the condition if the offender became current on his support obligations. 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, at ¶ 18. We began our analysis by repeating our statement in *Jones* that a condition " 'cannot be overly broad so as to unnecessarily impinge upon the probationer's liberty.' " *Id*. at ¶ 13, quoting *Jones* at 52. "[I]nfringements of constitutional rights must be tailored to specific government interests," we explained. *Id*. at ¶ 23. We further noted that "the availability of ready alternatives to a regulation is evidence that the regulation is unreasonable[.]" *Id*. at ¶ 14. We then applied the *Jones* test and carefully scrutinized the provision, ultimately concluding that the provision was invalid because it did not provide for a lifting mechanism. *Id*. at ¶ 21-25. We reached this result notwithstanding the fact that the offender was not current on his support obligations, and that nothing would have prevented him from asking the trial court to lift the ban should he become current. *Id.* at ¶ 21.

**{¶ 22}** Importantly, because we concluded that the anti-procreation condition in *Talty* was overbroad, we found it unnecessary to decide whether it would have been permissible had it included a lifting mechanism. We explicitly stated that we were "not determin[ing] whether a mechanism that allowed the anti[-]procreation condition to be lifted would have rendered the condition valid under *Jones* * * *." *Id*. Today, we address the question we left unanswered in *Talty*.

### C. The Procreation Condition Is Not Reasonably Related to the Goals of Community Control

**{¶ 23}** In *Jones*, we established a three-part test to assess whether a community-control condition is reasonably related to the goals of community control. A court must "consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably

8

related to future criminality and serves the statutory ends of probation." *Jones*, 49 Ohio St.3d at 53, 550 N.E.2d 469.

{¶ 24} The *Jones* test directs us to look at the crime that Chapman committed—the nonsupport of his dependents. R.C. 2919.21(B) makes it a crime to fail to provide support as required by court order. But a failure to pay the entire support amount is excused if the accused can show he "provide[d] the support that was within [his] ability and means." R.C. 2919.21(D). The statutory scheme does not criminalize the failure to support one's dependents in and of itself. Rather, it penalizes an individual's failure to provide the mandated support that *he can pay*.

{¶ 25} Thus, under the statute, the criminality of Chapman's conduct is separate from the number of children he has. While his obligation might increase with more children, his ability to pay is separate. And it is his failure to pay as his means and ability allow that is criminal—not the number of children for whom he failed to provide. And while the dissent says that the condition imposed "targets [Chapman's] criminal conduct," Chapman's criminal conduct was not fathering children, it was failing to pay support. Dissenting opinion at ¶ 36.

{¶ 26} The same considerations also reveal that the procreation prohibition is not reasonably related to the other two considerations enumerated in *Jones*— rehabilitation and the possibility of present or future criminality. 49 Ohio St.3d at 53, 550 N.E.2d 469. No doubt fathering another child would increase Chapman's support obligations, but it would have little effect on preventing the criminal conduct that the statute proscribes. The statute is clear—if Chapman's means and ability only allow him to pay $1,000 per month to support his dependents and he does so, then his conduct complies with the statutory scheme. And that remains the case whether Chapman has 7 children, or 77.

{¶ 27} Chapman's failure to properly prioritize his obligations toward his children and pay support as he is able could prompt several conditions of community-control sanctions that would reasonably relate to his offense. The trial

court properly ordered Chapman to obtain and maintain full-time employment. It could have gone further in this direction: it might have ordered him to participate in job training, placed him in a program that would ensure that he was working and that child support was being deducted from his paycheck, required that he undergo education in financial planning and management, or placed restrictions on his spending. All of these would be reasonably related to Chapman's crime of nonpayment of child support. But as long as the crime of nonsupport depends on an offender's ability to pay, a prohibition requiring Chapman to "make reasonable measures" to avoid fathering another child during his term of community control is not.

{¶ 28} The lack of a fit between the offense of which Chapman was convicted and the availability of other more effective conditions leads to the conclusion that the condition "unnecessarily impinge[d] upon the probationer's liberty." *Jones* at 52. On remand, the trial court must remove the anti-procreation condition, but may impose other conditions that are appropriately tailored to the goals of community control.

### III. Conclusion

{¶ 29} The procreation prohibition is not reasonably related to the goals of community control, nor is it reasonably tailored to avoid impinging Chapman's liberty no more than necessary. As a result, we reverse the judgment of the Ninth District Court of Appeals and remand the cause to the trial court for the entry of a sentence that conforms with this opinion.

Judgment reversed
and cause remanded.

O'CONNOR, C.J., and KENNEDY, FISCHER, and STEWART, JJ., concur.

DONNELLY, J., concurs in judgment only.

FRENCH, J., dissents, with an opinion.

_____

**FRENCH, J., dissenting.**

{¶ 30} I agree with the majority that we should apply the reasonable-relationship test this court set out in *State v. Jones*, 49 Ohio St.3d 51, 53, 550 N.E.2d 469 (1990), to review the anti-procreation condition that the trial court imposed on appellant, London Chapman. Under *Jones*, we must consider "whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." *Id.* I also agree with the majority's conclusion that "a trial court can impose community-control sanctions that limit the offender's fundamental rights, provided that such limitations further the statutory goals of community control and are not overbroad." Majority opinion at ¶ 16; *see also Jones* at 52 (recognizing that a community-control condition cannot be "overly broad so as to unnecessarily impinge upon the probationer's liberty"). Rather than simply applying *Jones*, though, the majority now requires an amorphous "more exacting" justification for the community-control condition at issue here. Majority opinion at ¶ 19. I fear that the majority's heightened burden will lead to confusion and uncertainty as courts try to grapple with whether the more-exacting-justification standard applies to a court's imposition of a community-control condition that implicates a fundamental right. I would simply apply the standard set out in *Jones* and uphold the trial court's anti-procreation condition here. Accordingly, I dissent.

*The Trial Court Provided Significant Justification to Support the Anti-Procreation*

*Condition It Imposed*

{¶ 31} Before I apply our established standard of review from *Jones*, I must fill in gaps in the majority's recitation of the facts. The majority opinion makes it seem as though the trial court's anti-procreation order was lacking in analysis and justification. It was not. After soliciting and receiving briefs from the parties, the trial court imposed the community-control condition that Chapman "make all

reasonable efforts to avoid impregnating a woman during the community control period or until such time that [he] can prove to the Court that he is able to provide support for his children he already has and is in fact supporting the children or until a change in conditions warrant the lifting of [this] condition." The court also imposed other community-control conditions, including one requiring Chapman to obtain and maintain a full-time job during the community-control period. But because the trial court had not considered Chapman's constitutional challenge to the anti-procreation condition, the Ninth District Court of Appeals reversed the trial court's judgment and remanded the matter to the trial court so that it could consider that issue. *State v. Chapman*, 9th Dist. Lorain Nos. 16CA010969, 16CA010970, 16CA010971, 16CA010972, 16CA010973, and 16CA010974, 2018-Ohio-343, ¶ 12. On remand, the trial court issued a comprehensive judgment entry analyzing and rejecting Chapman's constitutional arguments. As part of its analysis, the trial court applied the *Jones* test and considered whether the anti-procreation condition was overly broad. It then imposed the same anti-procreation community-control condition that it had imposed previously, but it added additional—that is, more exacting—justification for the condition.

{¶ 32} In its order imposing the anti-procreation condition, the trial court explained that the condition has a direct relationship to Chapman's nonsupport offenses, which show that Chapman has continually failed to support children who by law he is required to support. It concluded that the condition relates directly to Chapman's repeated conduct of fathering children who he does not support. And it called Chapman's violations of his prior nonsupport obligations "egregious and systemic." The trial court also explained that the condition has a rehabilitative purpose of giving Chapman a better chance to support the children he has already fathered. The trial court emphasized that the condition requires Chapman only to make *reasonable* efforts to avoid impregnating a woman during the community-control period, and it recognized that there are a number of options available to

Chapman to satisfy that condition. Finally, the court discussed the condition's "lifting mechanism" and outlined a nonexhaustive list of events that might warrant lifting the condition, including the following:

1. Adoption [of the child]
2. Child lives with [Chapman]
3. Child reaches age of majority
4. Child becomes emancipated
5. Child joins the military at age 17
6. Child pass[es] away
7. Support forgiveness
8. Other reasons [domestic relation court] would terminate [the] order
9. Support modification
10. [Chapman] [p]ay[s] off arrears
11. [Chapman] [i]n fact support[s] the existing children
12. Any combination of the above

It is difficult to imagine what additional justification would satisfy the majority.

*We Apply the Reasonable-Relationship Test Set Out in* State v. Jones

{¶ 33} The majority correctly recognizes that the three-part reasonable-relationship test set out in *Jones* is the starting point for reviewing the reasonableness of a community-control condition. And the majority recognizes that a trial court can impose a reasonable community-control condition that limits an offender's fundamental rights if the condition satisfies the statutory goals of community control and is not overly broad. But then the majority modifies the *Jones* test and imposes a higher burden for when a community-control condition that implicates a fundamental right is "not necessarily intrinsic to community

control but [is] tailored to the rehabilitation of the offender." Majority opinion at ¶ 18. In those cases, the majority says, there must be a "more exacting" justification to support the condition. *Id.* at ¶ 19. The problem with that standard is that it is standardless. Which fundamental rights are "necessarily intrinsic to community control," *id.* at ¶ 18, such that an amorphous "more exacting" justification, *id.* at ¶ 19, is required and which are not? Is a "more exacting" justification necessary to support a condition that prevents an offender from owning or possessing a firearm while he is on community control for a nonviolent offense? *See, e.g.*, *State v. Nigrin*, 11th Dist. Trumbull No. 2015-T-0056, 2016-Ohio-2901, ¶ 6 (offender prohibited from owning or possessing a firearm or ammunition while on community control for criminal-trespassing offense). What about a condition that prohibits an offender's freedom of speech by wholly preventing her from communicating with anyone who is incarcerated during the community-control period? *See*, *e.g.*, *United States v. Holloway*, 740 F.2d 1373, 1383 (6th Cir.1984) (offender prohibited from contacting anyone in prison as a condition of her probation following her conviction for tax fraud).

{¶ 34} The majority represents that our caselaw, specifically *Jones* and *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, supports the adoption of this more-exacting-justification standard, but it does not. In *Jones*, 49 Ohio St.3d at 52-53, 550 N.E.2d 469, this Court adopted a three-part test for reviewing a community-control condition that affects an offender's fundamental rights—in that case, the rights to free speech and free association. It did not adopt a more-exacting-justification requirement because the three-part test, plus its pronouncement that a condition may not be "overly broad so as to unnecessarily impinge upon" the offender's liberty, was sufficient. *Id.* at 52. In *Talty*, we expressly declined to address the offender's constitutional arguments and simply applied the *Jones* test. *Talty* at ¶ 18-25. In my view, *Jones* provides the appropriate

standard for analyzing whether a community-control condition, including one that implicates a fundamental right, is reasonable.

{¶ 35} Applying the three-part test outlined in *Jones*, I agree with the trial court and the court of appeals that the community-control condition at issue here is reasonably related to rehabilitating Chapman, has some relationship to the crimes of which he was convicted, and relates to criminal conduct or reasonably relates to future criminal conduct and serves the purposes of community control.

{¶ 36} The majority concludes that the trial court's anti-procreation condition is not reasonably related to the goals of community control because the "criminality of Chapman's conduct is separate from the number of children he has." Majority opinion at ¶ 25. I disagree. To reach this conclusion, the majority focuses on R.C. 2919.21(B) and (D), and it characterizes Chapman's failure to meet his court-imposed child-support obligations as the only criminal conduct relevant to this case, because that is the criminal conduct for which he was convicted. But application of the *Jones* test is not limited to consideration of the exact crimes for which community control was imposed. It requires that the community-control condition have *some relationship* to the crimes of which the offender was convicted. *Jones* at 53. It is difficult to imagine how fathering dependents that the law mandates Chapman to support does not have *some relationship* to the criminal act of failing to pay court-ordered support for his dependents. The *Jones* test also requires a court to consider whether the condition relates to conduct that is criminal or is reasonably related to future criminality. *Id.* R.C. 2919.21(A)(2) expressly prohibits a person from abandoning or failing to provide adequate support for his child, with limited exceptions that are not at issue here. The trial court's anti-procreation condition targets that criminal conduct. Contrary to what the majority represents, the statutory scheme *does* criminalize the failure to support one's dependents. The community-control condition at issue here seeks to prevent Chapman from having additional children whom he will not support.

**{¶ 37}** The trial court's anti-procreation condition is also reasonably related to rehabilitating Chapman. As the majority acknowledges, "[F]athering another child would increase Chapman's support obligations." Majority opinion at ¶ 26. It stands to reason then that by taking reasonable precautions to prevent fathering another child, Chapman will not increase his child-support obligations. If his child-support obligations do not increase, Chapman is more likely to be able to meet his current, outstanding obligations.

**{¶ 38}** Finally, the trial court's anti-procreation community-control condition is not overly broad in this case. In *Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, at ¶ 20-21, this court concluded that an anti-procreation community-control condition was overly broad because it did not contain a mechanism for lifting the condition. But here, the trial court required only that Chapman make *reasonable* efforts to avoid impregnating another woman during his five-year community-control period. The trial court then outlined a minimum of 12 ways by which Chapman could have the condition lifted. This is not a case in which the trial court decided to impose an anti-procreation community-control condition for minor instances of failure to pay child support. Chapman currently has at least 11 children that he is not supporting, and his child-support arrearage at the time of his 2018 resentencing was already over $200,000. The trial court found that Chapman's violations of his prior child-support obligations were "egregious and systemic." Under these facts, its anti-procreation condition is not overly broad.

**{¶ 39}** Because the anti-procreation community-control condition that the trial court imposed here is reasonable under the three-part test set out in *Jones* and is not overly broad, I would affirm the judgment of the Ninth District Court of Appeals. Therefore, I dissent.

_____

Dennis P. Will, Lorain County Prosecuting Attorney, and Jennifer Goodall, Assistant Prosecuting Attorney, for appellee.

16

Bremke Law, L.L.C., and Giovanna V. Bremke, for appellant.

David J. Carey, B. Jessie Hill, and Freda J. Levenson, urging reversal for amicus curiae, American Civil Liberties Union of Ohio Foundation.

_____