[Cite as *State v. Oatman*, 2026-Ohio-1113.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO,<br>CITY OF PAINESVILLE,<br><br>　　　　　Plaintiff-Appellee,<br><br>- vs -<br><br>SABREL B. OATMAN<br><br>　　　　　Defendant-Appellant. | CASE NO. 2025-L-063<br><br>Criminal Appeal from the<br>Painesville Municipal Court<br><br>Trial Court No. 2024 CRB 00262 |

## OPINION AND JUDGMENT ENTRY

Decided: March 30, 2026
Judgment: Affirmed

*James R. O'Leary*, Painesville City Prosecutor, 77 North St. Clair Street, Suite 100, Painesville, OH 44077 (For Plaintiff-Appellee).

*Sabrel B. Oatman*, pro se, 4196 Flossy Lane, Perry, OH 44081 (Defendant-Appellant).

MATT LYNCH, P.J.

{¶1}　Appellant, Sabrel B. Oatman, pro se, appeals the sentencing entry of the Painesville Municipal Court that sentenced him, after a jury found him guilty of one count of violating a civil protection order ("CPO"), to 180 days in jail, with 90 days suspended, and a 60-month term of community control, which included a prohibition against firearms. For the following reasons, we affirm.

{¶2}　On February 26, 2024, the municipal court held an arraignment at which Oatman pleaded not guilty to violating a CPO, a first-degree misdemeanor, in violation of R.C. 2919.27(A)(1).　Several days prior, on February 20, 2024, Oatman had been

charged in a separate case ("case No. CRB 2400246") with another count of violating a CPO, also a first-degree misdemeanor, in violation of R.C. 2919.27(A)(1).

{¶3}  On March 5, 2024, Oatman's counsel signed and filed a speedy trial waiver, and on defense counsel's motion, pretrial was continued to April 30, 2024.  On May 26, 2024, Oatman's new counsel filed a notice of substitution of counsel.  On July 23, 2024, defense counsel filed a motion to sever offenses from case No. CRB 2400246, which the court overruled on July 31.  On August 12, 2024, defense counsel filed a motion to withdraw, and the court appointed Oatman a public defender.  The jury trial for both cases was held per appointed counsel's availability on September 18, 2024.

{¶4}  As relevant to the instant case, the State introduced as witnesses Oatman's former partner, J.B., and Lieutenant Michael Collins from the Village of Perry Police Department.  The State also admitted into evidence several photographs and videos from home surveillance cameras around and on the residence shared by J.B. and Oatman ("the Perry residence").  Oatman testified in his own defense.

{¶5}  J.B. testified she and Oatman were in a relationship for two years and had a son together.  They mutually ended their relationship in February 2024.  On February 16, 2024, J.B. obtained an ex parte domestic violence CPO against Oatman.  She was afraid of Oatman's anger, explaining that in September 2023, Oatman "had held a gun to his head" while they were arguing and there were firearms in the Perry residence.  J.B. explained that the CPO specifically required Oatman to vacate the Perry residence; surrender all keys and garage openers to the home within 24 hours of being served with the CPO; and not possess, use, or carry any deadly weapons.  On February 22, 2024, at approximately 3:00 a.m., J.B., who was staying with her parents, received a notification alert on her phone from the Perry residence surveillance cameras.  The videos showed

Case No. 2025-L-063

Oatman, who had parked on the street, walking up to the front door.  He looked in a window before walking around to the back of the house and appeared to be speaking on his cellphone.  J.B. filed a civil complaint with the Village of Perry Police Department and gave the intake officer a copy of the home surveillance videos and photographs, as well as a copy of the CPO.  J.B. authenticated the videos and photos for the court by identifying them as the ones she took from an "app" on her phone that was connected to her and Oatman's surveillance cameras.  She testified the videos were unaltered and they were the same ones she gave to the police department.  She identified where the cameras were stationed and the parts of the house that were depicted in the videos.  Defense counsel had no objections, and the videos and photographs were presented to the jury.

{¶6}    J.B. explained to the jury that the Perry residence was solely in Oatman's name, she had been staying with her parents for a week before the incident, and she had been having trouble getting her belongings from Oatman.  Once the CPO was in place and she had access to the Perry residence, she hired a moving truck to assist with moving her property out of the home.

{¶7}    Lt. Collins testified J.B. filed a civil complaint regarding the CPO violation and gave him a copy of the CPO and the videos and photographs.  He further testified that the videos played to the jury were the same videos he received from J.B. at the time she filed the complaint.  Believing a violation of the CPO had occurred, Lt. Collins subsequently obtained a warrant for Oatman's arrest from the municipal court.  Sometime in the next few days, Oatman went to the police department, at which time he was served with the warrant and arrested.  Lt. Collins was not present at that time.

{¶8}    Oatman testified that he and J.B. decided mutually to end their relationship in February 2024.  Oatman ran a business in Willoughby, Ohio, and the couple decided

Case No. 2025-L-063

he would stay at his shop, and J.B. and their son would stay at the Perry residence. When Oatman discovered J.B. was already planning to move out of the Perry residence, he went to the home and changed the locks. Oatman further testified that based on the advice of his attorney, he did not want J.B. in the house removing property without him or a police officer present. He testified that J.B. went to the Perry Police Department to gain access to the home, but she was advised it was a civil matter. After several days of unsuccessfully attempting to contact his attorney, on February 16, 2024, Oatman decided to take some of J.B.'s belongings to her at her parents' house. No one there, including J.B., mentioned a CPO had been issued that morning. Oatman was served with the CPO later that day at his place of business, out of which arose the underlying incident in case No. CRB 2400246. On that day, he had guns in plain view in his shop that were confiscated by the Lake County Sheriff's Office per the CPO.

{¶9} On February 22, 2024, Oatman went to the Perry Police Department to file a civil complaint for a CPO violation because J.B. was removing property from the Perry residence. He was served with the warrant issued in this case and arrested. He testified that he knew there was a "risk" and that he was not supposed to go onto the Perry residence property.

{¶10} The jury found Oatman guilty in this case and not guilty in case No. CRB 2400246. The court proceeded directly to sentencing. Defense counsel argued for a term of community control because the CPO violation was "nonviolent," the CPO had since been terminated, Oatman does not have a criminal history, and Oatman complied with the court's order to wear a GPS bracelet since his arraignment. Defense counsel further argued that the complaint failed to include the necessary language for a criminal forfeiture of firearms and requested the court to release Oatman's firearms and keys that

were taken when the CPO was issued.  The State advocated for a maximum 180-day jail sentence and believed the firearms in the possession of the Lake County Sheriff's Department should be subject to forfeiture.  The State argued that at the very least the firearms should remain in police custody until the matter was further determined.  Defense counsel objected, again noting that forfeiture was not included in the complaint or determined by the jury.

{¶11}  The court noted its involvement since Oatman was charged and arraigned in the first case on February 20, 2024.  At that time, the court warned Oatman he must comply with the CPO.  Deputies then contacted the court to return some of Oatman's keys that had been taken when he was served with the CPO.  Several days later, Oatman was arrested on the warrant issued in the instant case.  Because of this, the court was concerned Oatman could not follow court orders, noting it "went out [of the] way to try to put things back together again on this matter."  The court sentenced Oatman to 180 days in jail, with 90 days suspended provided he comply with the conditions of a 60-month term of community control.  The conditions included a prohibition against firearms.  The court ordered that all the evidence, including Oatman's firearms, remain in the custody of the police, and noted that motions can be filed as Oatman's sentence proceeds.

{¶12}  This court granted Oatman's motion to file a delayed appeal.  He raises the following assignments of error for our review:

{¶13}  "[1.] The trial court violated Appellant's statutory and constitutional speedy-trial rights under R.C. 2945.71-.73 and the Sixth Amendment.

{¶14}  "[2.] The court erred by admitting unauthenticated digital evidence lacking proper foundation and chain of custody.

Case No. 2025-L-063

{¶15} "[3.] The sentence is contrary to law where community-control conditions/duration and firearm-related restrictions lack statutory authorization and record support.

{¶16} "[4.] The State's acquisition and/or use of Appellant's private home-camera footage without a warrant or valid consent violated the Fourth and Fourteenth Amendments; alternatively, admitting the video absent proper foundation was plain error affecting substantial rights."

{¶17} At the outset, we note Oatman's appellate brief is not compliant with App.R. 16(A)(7), which provides that an appellant's brief shall include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary." While we could summarily disregard Oatman's assigned errors on this basis, we will proceed to the merits of his arguments as much as they can be disentangled. *See J&S Motors, L.L.C. v. Hendking*, 2025-Ohio-2925, ¶ 23 (11th Dist.) (an assignment of error may be disregarded if it fails to comply with App.R. 16(A)(7)); *Estate of Andolsek*, 2025-Ohio-5286, ¶ 16 (11th Dist.) (this court addressed the merits of appellant's arguments as far as they could be discerned and as they pertained to the judgment being appealed).

{¶18} Further, the appellate rules do not recognize "preliminary," "threshold," or "dispositive" arguments, as described in Oatman's appellate brief, and those will be disregarded. Lastly, we disregard Oatman's third assignment of error wherein he challenges the sufficiency of the evidence and manifest weight of the evidence because

Case No. 2025-L-063

he neglected to brief that assignment of error entirely. We address Oatman's other renumbered assigned errors out of order and sometimes jointly for ease of discussion.

## Speedy Trial Violation

{¶19} In his first assignment of error, Oatman contends his statutory and constitutional rights to a speedy trial were violated.

{¶20} Speedy trial issues present mixed questions of law and fact. *State v. Brown*, 2023-Ohio-3017, ¶ 44 (11th Dist.). Appellate courts accept the facts as found by the trial court if supported by some competent, credible evidence but freely review the trial court's application of the law to the facts. *Id.* The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. *Id.* at ¶ 45. The statutory speedy trial provisions set forth at R.C. 2945.71 et seq. are coextensive with these constitutional rights. *Id.*

{¶21} As pertaining to Oatman's statutory argument, Oatman was charged with violating a CPO, in violation of R.C. 2919.27(A)(1), a first-degree misdemeanor. *See* R.C. 2919.27(B)(2). Thus, pursuant to R.C. 2945.71(B)(2), the court was required to bring Oatman to trial within 90 days of his February 26, 2024 arrest.

{¶22} Oatman's first counsel signed a written speedy trial waiver on March 5, 2024. "As a general proposition, the defendant in a criminal action can waive his constitutional and statutory rights to a speedy trial so long as the determination is made both knowingly and voluntarily." *State v. Boda*, 2013-Ohio-2258, ¶ 14 (11th Dist.), citing *State v. King*, 70 Ohio St.3d 158, 160 (1994). "However, 'for purposes of trial preparation, a defendant's statutory right to a speedy trial may be waived, with or without the defendant's consent, by the defendant's counsel.'" *Id.*, quoting *King* at 160.

Case No. 2025-L-063

"Furthermore, a valid waiver can be made either in writing or in open court on the record." *Id.*, citing *King* at 161.

{¶23} In addition to the signed written waiver by his counsel, Oatman failed to allege a violation of his speedy trial rights in the municipal court and has therefore waived this issue on appeal. Pursuant to R.C. 2945.73(B)(1), "*Upon motion made at or prior to the commencement of trial*, a person charged with a misdemeanor shall be discharged if the person is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." (Emphasis added.) Thus, "'if an appellant claims on appeal that his right to speedy trial was denied, and the record demonstrates that he permitted the trial to proceed without objection, then he has waived the issue and is barred from raising the issue of the denial of his speedy trial on appeal.'" *State v. Zaken*, 2007-Ohio-2306, ¶ 26 (11th Dist.), quoting *State v. Pocius*, 1996 WL 761213, *6 (11th Dist. Dec. 13, 1996).

{¶24} Even if we considered Oatman's argument, it would lack merit. "The time within which an accused must be brought to trial . . . may be extended . . . by . . . [a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused." R.C. 2945.72(E). A review of the docket reveals several tolling events, all initiated by the defense. More specifically, Oatman's first attorney filed a demand for discovery on February 28, 2024, and signed a written speedy trial waiver and requested a continuance on March 5, 2024. After trial was scheduled for June 18, 2024, Oatman obtained new counsel, who filed a new demand for discovery on May 26, 2024. At a change of plea hearing on July 2, 2024, the court scheduled the jury trial for August 14, 2024. Oatman's counsel then filed a motion to sever offenses on July 23, 2024, which was overruled by the court on July 31, 2024. On August 12, 2024, two days before the scheduled trial, Oatman's second counsel

withdrew, and the court appointed the Lake County Public Defender's Office. On August 16, 2024, per appointed counsel's availability, the jury trial was set for, and held on, September 18, 2024.

{¶25} Oatman's assertion that his constitutional right to a speedy trial was violated is similarly without merit. In *Barker v. Wingo*, 407 U.S. 514 (1972), the United States Supreme Court articulated an ad hoc*,* four-factor approach for determining when a defendant has been denied his constitutional right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *Id.* at 530. *Accord Pocius* at *6. Applying the *Barker* factors here, approximately 204 days elapsed between Oatman's arrest and the date of trial. While the statutory period had clearly passed, as just reviewed, all the delays were initiated by the defense and the last trial date was selected based on Oatman's appointed counsel's availability. Third, Oatman never asserted his rights to a speedy trial in the trial court and thus waived the issue for purposes of appeal. Lastly, Oatman has not demonstrated, and we cannot discern, any prejudice from the delay.

{¶26} Because neither Oatman's statutory nor constitutional rights to a speedy trial were violated, Oatman's first assignment of error is without merit.

### Authentication of Video Evidence

{¶27} In his second and fourth assignments of error, Oatman challenges the trial court's admission of the home surveillance videos from the Perry residence as downloaded from J.B.'s cellphone and submitted to the Perry Police Department. More specifically, Oatman challenges whether the videos were properly authenticated and contends the State did not establish a chain of custody or lay a proper foundation. Oatman also argues the police obtained this evidence without first obtaining a warrant, in

violation of his Fourth and Fourteenth Amendment rights under the United States Constitution.

{¶28} The determination to admit or exclude evidence lies within the discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Miller,* 2015-Ohio-956, ¶ 14 (11th Dist.). An abuse of discretion is "the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2010-Ohio-1900, ¶ 62 (2d Dist.), quoting *Black's Law Dictionary* (8th Ed. 2004). Because Oatman did not object to the admission of the video at trial, he has waived this issue on appeal absent plain error. *See State v. Allen*, 73 Ohio St.3d 626, 635 (1995). "'Plain error exists when it can be said that but for the error, the outcome of the trial would clearly have been otherwise.'" *State v. Edwards*, 2025-Ohio-5708, ¶ 51 (11th Dist.), quoting *State v. Issa*, 93 Ohio St.3d 49, 56 (2001).

{¶29} Evid.R. 901(A) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Pursuant to Evid.R. 901(B)(1), "[t]estimony that a matter is what it is claimed to be" is sufficient to authenticate the evidence. "Put another way, '[t]he authentication requirement is satisfied when the proponent presents foundational evidence or testimony from which a rational jury may determine that the evidence is what its proponent claims it to be.'" *State v. Thyot,* 2018-Ohio-644, ¶ 18 (1st Dist.), quoting *State v. Crossty*, 2017-Ohio-8382, ¶ 29 (1st Dist.).

{¶30} "'The admissibility of photographic evidence is based on two different theories. One theory is the "pictorial testimony" theory. Under this theory, the photographic evidence is merely illustrative of a witness' testimony and it only becomes

admissible when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on that witness' personal observation. . . . A second theory under which photographic evidence may be admissible is the "silent witness" theory. Under that theory, the photographic evidence is a "silent witness" which speaks for itself, and is substantive evidence of what it portrays independent of a sponsoring witness. . . . (Citations omitted.)'" *Midland Steel Prods. Co. v. U.A.W. Local 486*, 61 Ohio St.3d 121, 129-30 (1991), quoting *Fisher v. State*, Ark.App. 1, 5-6 (1982).

{¶31} In *Midland Steel,* the Supreme Court of Ohio explained that expert testimony regarding the reliability of a video surveillance system is not necessary, and lay testimony is sufficient. *Id.* at 130. In that case, the lay witness "was able to testify from personal knowledge of the layout" and "referred to these known features as he described the summary videotape in his testimony." *Id.* In other words, "[the lay witness] impliedly authenticated the accuracy of the surveillance system and the videotapes each time he described the location of these known features. Since the summary videotape depicted these known features accurately, it was likely that it also depicted the appellants' misconduct accurately." *Id.* Further, the lay witness testified that he was the custodian of the videotapes, he had not altered them, and they "accurately depicted what he had seen while he personally monitored the surveillance system." *Id. Accord State v. Grant*, 2025-Ohio-5095, ¶ 18-19 (11th Dist.).

{¶32} Similarly, in this case, J.B.'s testimony authenticated the videos that she downloaded from her phone and gave to the Perry Police Department when she filed a civil complaint against Oatman for violating the CPO. Before the evidence was shown to the jury, J.B. identified the videos as the videos she was alerted to at 3:00 a.m. on February 22, 2024, from her and Oatman's home surveillance cameras; she described

the various locations of the Perry residence depicted in the videos; and she averred she did not alter them in any way. Lt. Collins further identified the videos as the same ones J.B. had provided to him the day she filed the civil complaint. Thus, the videos were properly authenticated under the "silent witness theory."

{¶33} Lastly, these videos were not obtained by a warrantless search of Oatman's home surveillance system but, rather, were downloaded from J.B.'s phone and submitted by her to the Perry Police Department. Thus, a "warrantless search and seizure" analysis pursuant to the Fourth and Fourteenth Amendments of the United States Constitution is inapplicable.

{¶34} Oatman's second and fourth assignments of error are without merit.

**Sentence Contrary to Law**

{¶35} In his third assignment of error, Oatman contends his sentence is contrary to law because his term of community control is too long, and the firearm-related restrictions are unrelated to the offense of violating a CPO.

{¶36} "Misdemeanor sentencing lies within the discretion of the trial court and will not be disturbed absent an abuse of discretion." *State v. Takacs*, 2023-Ohio-3302, ¶ 7 (11th Dist.), quoting *State v. Hogya*, 2023-Ohio-342, ¶ 14 (11th Dist.).

{¶37} R.C. 2929.21(A) provides that a court sentencing a misdemeanor offender "shall be guided by the overriding purposes of misdemeanor sentencing," i.e., "to protect the public from future crime by the offender and others and to punish the offender." A sentence imposed for a misdemeanor "shall be reasonably calculated to achieve the two overriding purposes of misdemeanor sentencing . . ., commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim,

Case No. 2025-L-063

and consistent with sentences imposed for similar offenses committed by similar offenders." R.C. 2929.21(B).

{¶38} "To achieve the two overriding purposes of misdemeanor sentencing, the sentencing court must consider the criteria set out in R.C. 2929.22(B)." *State v. Williams*, 2022-Ohio-4062, ¶ 14 (11th Dist.). "R.C. 2929.22 does not, however, mandate that the trial court state on the record that it considered the applicable statutory factors." *Id.* "'"A silent record raises the presumption that the trial court considered all of the factors . . . ."'" *Id.*, quoting *State v. Peppeard*, 2009-Ohio-1648, ¶ 75 (11th Dist.), quoting *Conneaut v. Peaspanen*, 2005-Ohio-4658, ¶ 26 (11th Dist.). "Consequently, when the misdemeanor offender's sentence is within the statutory limits and there is no affirmative indication on the record that the trial court failed to consider the factors set forth in R.C. 2929.22, the reviewing court is to presume the trial court considered the applicable statutory factors when it imposed the sentence." *Id.*

{¶39} Because a silent record raises the presumption that the trial court considered the purposes and factors pursuant to R.C. 2929.21 and R.C. 2929.22, and Oatman's sentence is within the statutory limits, we cannot say the trial court abused its discretion in this case. *See id.* at ¶ 15. Further, while the trial court sentenced Oatman to the maximum sentence of 180 days in jail for a first-degree misdemeanor and the maximum 60-month term of community control pursuant to R.C. 2929.24(A)(1) and R.C. 2929.25(A)(2), the trial court suspended 90 days of his jail sentence provided Oatman follow the conditions of his community control. In addition, the court shared its concern during sentencing that Oatman had difficulty complying with court orders. Indeed, Oatman's underlying conviction arose from a second instance of alleged noncompliance

with a CPO.  Since Oatman's sentence is within the statutory range, there is nothing to suggest his sentence is contrary to law.

{¶40} Oatman also contends the community control condition prohibiting firearms is not reasonably related to his offense of violating a CPO.

{¶41} "An appellate court reviews a trial court's imposition of community-control sanctions under an abuse of discretion standard."  *State v. Ballish*, 2026-Ohio-503, ¶ 10, citing *State v. Talty*, 2004-Ohio-4888, ¶ 10.  "Generally speaking, 'a court will not be found to have abused its discretion in fashioning a community-control sanction as long as the condition is reasonably related to' the goals of probation."  *Id*., quoting *State v. Chapman*, 2020-Ohio-6730, ¶ 8.  "'Such conditions cannot be overly broad so as to unnecessarily impinge upon the probationer's liberty.'"  *Id*., quoting *State v. Jones*, 49 Ohio St.3d 51, 52 (1990).

{¶42} Recently, in *Ballish*, the Supreme Court of Ohio clarified, "When the legislature has enumerated specific community-control sanctions, we review a sentencing court's imposition of those sanctions for an abuse of discretion, asking whether the condition is unreasonable, arbitrary or unconscionable."  *Id*. at ¶ 27.  *See, e.g.,* R.C. 2929.27(A)(8) (expressly authorizing a sentencing court to impose drug-and-alcohol-use monitoring as a condition of probation).

{¶43} Where a condition is not expressly authorized by statute, appellate courts review the imposition of the condition for an abuse of discretion using R.C. 2929.25(C)(2), which codified the test previously articulated in *Jones*.  *Id*. at ¶ 26.  "R.C. 2929.25(C)(2) authorizes a sentencing court to impose 'additional requirements on the offender,' so long as they are '[i]n the interests of doing justice, rehabilitating the offender, and ensuring the offender's good behavior.'"  *Id*. *See also Jones* at 53 ("courts should consider whether

Case No. 2025-L-063

the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation").

{¶44} Those conditions of community control that are not enumerated by the legislature generally fall into two categories. The Supreme Court of Ohio has explained that some conditions are "inherent in being supervised while allowed to remain in the community," such as "restrictions on travel, limitations on association, *restrictions on firearms ownership*, being subject to warrantless searches, and the like." (Emphasis added.) *Chapman*, 2020-Ohio-6730, at ¶ 18. Other conditions "are not necessarily intrinsic to community control but are tailored to the rehabilitation of the offender." *Id.*

{¶45} Thus, prohibiting firearms is an intrinsic condition to being supervised while remaining free in the community. Furthermore, contrary to Oatman's assertion, restricting firearms in this case is also reasonably related to his rehabilitation, has a direct relationship to the crime of which he was convicted, and deters any future criminality and serves the statutory ends of probation. *See id.*; *Jones*, 49 Ohio St.3d at 53. The very purpose of a CPO is to prevent domestic violence and harm in the home. Prohibiting firearms in a residence is directly related to that purpose and to the underlying circumstances surrounding the issuance of the CPO where Oatman held a firearm to his head during an altercation with J.B. Oatman then violated the CPO by going to the Perry residence at 3:00 a.m., in the early hours of the morning. Lastly, we note the court stated it would entertain motions, presumably regarding the firearms and their release to Oatman's custody, as his sentence progressed.

Case No. 2025-L-063

{¶46} Finding Oatman's misdemeanor sentence within the statutory range and the prohibition against firearms both an inherent and reasonable term of community control under the facts of the instant case, Oatman's third assignment of error is without merit.

{¶47} The judgment of the Painesville Municipal Court is affirmed.


JOHN J. EKLUND, J.,

ROBERT J. PATTON, J.,

concur.

Case No. 2025-L-063

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Painesville Municipal Court is affirmed.

Costs to be taxed against appellant.

_____
PRESIDING JUDGE MATT LYNCH

_____
JUDGE JOHN J. EKLUND,
concurs

_____
JUDGE ROBERT J. PATTON,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---

Case No. 2025-L-063